Welch, J.
The original case was an election contest. Howard
■had been declared elected sheriff of Brown county, and Shields, an elector and rival candidate, contested his election, *under ■the provisions of the statute on that subject. 1 S. & C. Stat. 540, rsecs. 39-42. In the common pleas, the contest was decided in favor of the contestor, and he was declared duly elected. To reverse this judgment, the present petition in error is prosecuted by the ■contestee. The errors assigned are numerous, but may be sub.stantially reduced to three.
The first is, that the court erred in overruling the motion of the contestee to dismiss the case, for uncertainty and insufficiency of the (notice of contest.
The following is a copy of the notice:
“ Georgetown, Brown County, Ohio,
November 30, 1864.
•“ T0 William G. Howard:
“ Sir :—You are hereby notified that at the general election held in October, a. d. 1864, at and within the county of Brown, and State of Ohio, on the 11th day of said month of October, at which said election you were an elector and candidate for the office of sheriff of said county of Brown, I was an elector and resident of .-said county, and a candidate for the same office.
“ You are further notified that, afterward, to wit, on the 12th •day of November, a. d. 1864, R. 0. Mitchell, clerk of the court of •common pleas of said county of Brown, as such clerk, proceeded, together with F. F. Shaw and Joseph S; Innis, two justices of the -peace within and for said county, to count out, according to law, and make an abstract of all votes cast within said county of Brown, .at said election, for said office of sheriff and other officers voted for at said election, and also of votes cast at various other places outside of said county of Brown, in virtue of an act of the general .assembly of the State of Ohio, passed March 30, 1864, at which counting out I received 2,442 votes cast within the said county, in ■the different townships thereof, and you received 2,166 votes cast within said county, as aforesaid, and I received one hundred and nineteen votes cast outside of said county, and you received four hundred and nineteen votes cast outside of said county, for said •office of sheriff of said county, as will appear’ by an abstract duly •certified by said *clerk of said court and said justices of the *170 peace, now on file at the clerk’s office of said county; and you' were thereby declared by said clerk and said justices duly elected to said office of sheriff of said county, at said election so held as aforesaid.
“You are further notified that I intend to contest your declared election, as aforesaid, before the next court of common pleas to be holden within and for said county, on the following grounds:
“1. Because the'state board of canvassers, comprised of the officers pointed out by law, proceeded, according to law, to make out an abstract of votes cast at said October election by electors of said; county outside of said county of Brown, from the poll-books, tally-sheets, and ballots, returned to the governor of Ohio, auditor of' state, and secretary of state, by which said abstract it appears, and is so certified by said board of canvassers, that I received for said office of sheriff, one hundred and fourteen votes so cast outside of said county of Brown, and that you received three hundred and-eighty-five votes so cast outside of said county of Brown, at said October election, and that said abstract made out from said poll-books, tally-sheets, and ballots, together with the votes so cast within said county of Brown, elects me to said office of sheriff of said county.
“ 2. Because minors voted at said election for you.
“ 3. Because the tally-sheets returned to the clerk of said court-are not certified according to law, nor do they show that the judges-of the election and the clerks thereat wore sworn as required by law.
“4. Because a portion of said tally-sheets so returned to said clerk, and counted by said clerk and said justices, show eloetionsheld by a number of voters less than ten at said election.
“5. Because the poll-books on which said votes so cast outside of the State of Ohio wore counted, are not certified according to-law, and do not show that the judges and clerks of said election were sworn according to law.
“ 6. Because said poll-books do not show the names of the voters, county and township of their residence, the letter *of their-respective companies, the name and number of the regiment, battery, and battalion to which said voters respectively belonged, as-required by law.
“ 7. Because illegal votes were cast at said election, for said William C. Howard.
“You are further notified that I will proceed, on the 12th day of December, a. d. 1864, at the office of John Woods, a justice of the-peace within and for said county, at his office, in Georgetown, in said county, between the hours of nine o’clock A. m. and nine o’clock p. m. of said day, to take depositions as to said points, before said John Woods and Joseph Innis, two justices of the peace within and for said county, who will officiate at the taking of the same; and that the taking of the said depositions will bo continued, if neces-. sary, between same hours, from day to day, until completed.
“ Respectfully, G. R. Shields.”
*171 The objection to the notice is twofold: 1. It does not, if true,. show a good case: 2. The “ points ” relied upon are not specified, with sufficient certainty.
We think the notice was sufficient. It contains all that the statute requires—notice that the election will be contested, and a specification of the “points ” relied upon. There is no analogy between, such a notice and a declaration at law. The object of the notice is, not to set forth a case, but to set forth the fact, generally, that a-case will be made, and to indicate the kind of evidence—not the result or effect of the evidence—by which it is to be made. The- “ points ” to be specified, are not required for the purpose of setting-forth a “ good case ”■—not for the purpose of informing the contestee that the attack will be successful, but to advise him at what points the attack will be made, in order that he may fortify, and not be taken by surprise. The points so made should be reasonably specific and certain. If any of them are not, however, the remedy is by objecting to testimony taken under them, and not by motion to dismiss. We think the points specified in this notice were stated with sufficient particularity and definiteness to subserve the object of the statute, which was, to limit the evidence of the contestor and to apprise the contestee of the *general nature of the objections to be made, so as to enable him to meet them without unnecessary expense and labor. We hold that the court did not err in overruling the motion.
The second error assigned is, that the court rejected the tally-sheets and poll-books of three several elections, held in the army-under the acts passed for that purpose.
These tally-sheets were in conformity to law, and unobjectionable. The defects in the poll-books accompanying them were,, that the number of voters is not stated at the foot, and does not. appear otherwise than by counting the names, and that they were-not signed by the judges and clerks. In other respects they are-regular and according to law. The names of the judges and clerks are recited in the caption of the poll-books, and are signed to the affidavit, which stands immediately below the place where they should have signed the poll-books. These tally-sheets were> received and counted by the county canvassers, and form part of the abstract made out by the clerk. The record shows that they were rejected by the court below, together with so much of the- *172 .abstract of the county canvassers as consisted of the votes therein .•evidenced.
In rejecting these papers, we are satisfied the court erred. The .tally-sheet alone makes a prima facie case. It is upon the tally- . sheet alone that the county canvassers declare the result. 61 Ohio .L. 92, sec. 17. The poll-books are not sent to them. If the tally is good before them, it should, till impeached, be good before the • court. The policy of the law seems to be, that until the contrary .is shown, the tally-sheet shall be taken and considered as a true ..statement of the number of legal votes cast for each candidate. -Of course, it is open to be impeached by the other party. But it is hardly necessary to say, that an informal or defective accom'panying poll-book, in no way contradicting its statements, is not .an impeachment.
If, however, the poll-books were indispensable, was there not -substantially a sufficient signing to make them valid as such? The judges and clerks signed the affidavit. We have, then, their •oaths and their signatures. Would an additional signature add .anything to the verity of the paper ? I think not. I think the requirement to sign at the *foot, and the requirement to rstate the whole number of votes—a matter which can be obtained from the body of the poll-book—should be considered as merely ■ directory, and not as absolutely essential. The original act which requires the county canvassers to make their abstract from .the poll-books, and not from the tally-sheets, declares, that “ no •election shall be set aside for want of form in ’the poll-books, provided they contain the substance.” 1 S. & C. Stat. 539, sec. 33. Jf these were defects in substance and not in form merely, it is ■enough to say that the tally-sheets were perfect and unimpeached.
The remaining assignment is, that the court erred in excluding • •parol evidence offered by the contestee, to supply defects in the tally-sheet and poll-book of an election held in the 70th Regiment -O. V. I.
In this case the tally-sheet and poll-book were both defective. 'The tally-sheet has the proper recitals in its caption, of the time, place, and military organization, and of the names of the judges and clerks; but it is not signed by the judges and clerks. The poll-boob •is properly signed by the judges and clerks; but it has no recitals in the caption, the blank spaces being unfilled. Each, taken sepa* *173 rately, is substantially defective; and yet both, taken together;, show ‘all the necessary facts.
In order to supply these defects, the contestee offered, in connection with the tally-sheet and poll-boob, sundry depositions, taken before the justices under the notice, fully authenticating the-tally-sheet and poll-book as the tally-sheet and poll-book of said election, actually kept and made out by the judges and clerks who-’signed the poll-book, and at the time and place, and in the regiment named in the tally-sheet; and that the voters credited to • Brown county thereon, were residents of said county. This evidence, as well as the tally-sheet and poll-book to which it referred,, was rejected by the court.
The question presented by this assignment of error is important,. and, so far as we know, has never been directly before the court. That question is : Can the court, in trying a contested election, go ■- behind the poll-boobs and tally-sheets, to supply and correct mere-omissions and mistakes in them, by parol evidence? We have no ■ hesitation, either *upon principle or authority, in answering the question in the affirmative. For what other purposes the court can go behind them, it is not for us now to decide.
Much less is it necessary, in the present case, to undertake to ■ draw the line between what is merely directory and what is vital' in the provisions of law regarding such documents. The question is not best determined in that way. Such provisions may be considered directory for one purpose and vital for another. The provision, for instance, that the poll-book shall be signed by the judges - and clerks, may be vital as to the poll-books per se, and yet directory1 as regards the legality of the election itself. The question to be-decided in an election contest is : Which party received the greatest1" number of legal votes ? If the court can, as it necessarily must, go behind the abstract, why should it not also go behind the poll- ■ books and tally-sheets? And if it go behind the latter for any" purpose, one of the first and most obvious would seem to be to cure mere mistakes and formal omissions. If you may impeach them by parol, why not sustain them by parol? We apprehend the true • rule to be, that both the abstract and the poll-books and tally-sheets, when substantially correct upon their face, are prima facie sufficient, but may be impeached by evidence aliunde, showing theii ■ falsity or insufficiency; and that when not so substantially correct' upon their face, they may be sustained in the same way. To hold'* *174 that when an election has been in fact held, and the majority of the legal voters have in fact, and according to the prescribed forms of .law, cast their ballots for the candidates of their choice, the constitutional rights of the voters, and of their candidates, can be defeated by a mere misprison or omission of the judges or clerks, would be manifestly unjust, and contrary to the plain intent and spirit of our election laws. Such a result would be permitted only in eases of necessity arising from the want of proper means to ascertain, with reliable certainty, the facts of the case. Such is not the •case here. We have all the facts, and they are not, as the case now stands, disputed. They are contained in the poll-book and tally-sheet, supported by the parol evidence. Together, they show an election held according to law, and the precise number of votes actually cast *for each candidate. To this evidence the con•tostor demurs. We think that such a demurrer, in an election eon-■test, is hot well taken.
That in such a contest the court, unlike the canvassers, can go •behind the tally-sheets and poll-books, seems well settled in New York, and we are shown no authority to the contrary elsewhere. ;See People v. Cook, 4 Selden, 67; People v. Van Slyck, 4 Cowen, 297; People v. Ferguson, 8 Cowen, 102; People v. Vail, 20 Wend. 14. In the last-named case the court, in speaking of the injustice of a contrary holding, says: “It would be nothing less than saying that the will of the people, plainly expressed in the forms pre,scribed by law, must be utterly defeated by the negligence, mistakes, or fraud of those who are are appointed to register the re•sults of an election.” And again: “ I think we are bound in this proceeding (a quo warranto) to go back to the town canvass, and rectify the errors in the statement of the inspectors.”
In Ohio we have but a single dictum on the question, and that is in Ingerson v. Berry, 14 Ohio St. 325, where the judge delivering the •opinion, in speaking of the powers of the court, says: “ It is clothed with full power to judge of the validity of the returns as shown by ,the poll-books, and to go behind them and inquire into the legality of every vote which they exhibit.”
. We are satisfied the court erred in rejecting the three perfect tally-sheets and their accompanying defective poll-books, and also in refusing the defective poll-book and tally-sheet so sustained by parol evidence. Of course, when admitted, they will be subject ■.to impeachment by counter testimony of contestor. What would *175 have been the final legitimate result had they been so admitted, it is not for us to say. It is enough to know, as the record shows, that if not so impeached, or overcome by other evidence, their effect would have been to change the result, and that therefore the error was one apparently to the prejudice of the plaintiff in error. The judgment must therefore be reversed, and the cause remanded for further proceedings.

Judgment reversed, and cause Remanded.

Brinkerhoee, C. J., and Scott, Day, and White, JJ., concurred.