THE PEOPLE, on the relation of Benton, *vs.* VAIL.

On an information in the nature of a *quo warranto,* where the relator and the defendant were opposing candidates for the office of *county clerk,* the defendant being in under a former election, and having received a certificate of *re-election* from the county canvassers: IT WAS HELD, that on the trial of the issue joined between the parties, it was competent to the relator to prove that in the return of the canvassers of one of the towns of the county, a mistake had occurred in *omitting* to state the number of votes given for each candidate; and such proof having been given, whereby it appeared that the relator and not the defendant was elected by the greatest number of votes, *it was adjudged* by this court, notwithstanding the certificate of the county canvassers, that the relator was *duly elected.*

It was further held, that the *information* was regularly filed on the *sixth* day of *January,* notwithstanding that the defendant was *lawfully holding over* in consequence of the relator not having received a certificate of election.

INFORMATION, in the nature of a *quo warranto* against the defendant for exercising the office of *clerk* of the county of *Orange,* averring that the *relator* is rightfully entitled to the office. The information was filed, January 6th, 1838. The cause was tried before the Hon. CHARLES H. RUGGLES, one of the circuit judges, at the Orange Circuit, in April, 1838, when the jury found a special verdict. From the verdict and the stipulations of the parties, the following facts appear : At the fall election, in 1834, the defendant was elected clerk of the county of *Orange,* for the term of three years from the 1st day of January, 1835 ; and on the said 1st day of January, he entered upon the discharge of his duties, and has ever since exercised the office. The defendant was a candidate for re-election in the fall of 1837, and the relator was an opposing candidate ; the board of county canvassers determined that the defendant was elected, he having received 2724 votes, and the relator 2706 votes ; and they certified that 592 votes were given for the office of clerk in the town of Monroe, but that it was not mentioned in the *town canvass* for whom they were given. It was also proved, subject to an objection from the defendant as to the competency of the evidence, that of the 592 votes in the town of *Monroe,* for the office of clerk,

323 were given for the relator, and 269 for the defendant—that the votes were so canvassed by the town canvassers, but that in making their certificate, after stating the whole number of votes given for tl e office of clerk, they omitted to state how many were given for each candidate.  If these votes had been allowed, the relator would have been elected by a majority of 36 votes, but being rejected by the county canvassers, the defendant had a majority of 18 votes.  The canvass in the town of *Monroe* was completed, and the certificates made on the 8th of November. At the meeting of the county canvassers on the 14th of that month, the supervisor of *Monroe* discovered the omission in the certificate for his town, and on the adjournment of the county board to the next day, he immediately returned home, and at a meeting of three out of five of the inspectors who presided at the town election, an addition was made to the original certificate, stating the true number of votes given to each of the candidates. This was made, signed by the three inspectors, and dated the 14th November.  At the meeting of the county board the next day, the supervisor of *Monroe* again appeared, and presented the amended certificate : the board received so much of the certificate as was made on the 8th November, rejected the addition made on the 14th, and determined that the defendant was elected. On the 1st January, 1838, the relator took, subscribed and filed the proper oath, and demanded the possession of the office.  On the 6th January, the information was filed, and on the 15th of that month the defendant took the oath of office.

*I. R. Van Duzer & H. G. Wisner*, for the people.

*J. W. Brown*, for the defendant.

*By the Court*, Bronson, J.  The certificate of the board of county canvassers that the defendant was elected clerk, was sufficient evidence of that fact.  1 *R. S.* 118, *s.* 17.  But, I think, both upon principle and authority, that it was not conclusive. The same objection that is made by the defendant in this case, was strenuously urged by counsel in *The People* v. *Van Slyck,*

4 *Cowen*, 297, and was then expressly overruled. In *The People* v. *Ferguson*, 8 *Cowen*, 102, it was held, notwithstanding the determination of the canvassers in favor of the defendant, that the court and jury could look beyond the ballot boxes, and enquire whether votes given for *H. F. Yates* were not intended by the electors for the relator *Henry F. Yates.* The decision of the canvassers was conclusive in every form in which the question could arise, except that of a direct proceeding by *quo warranto* to try the right. *The People* v. *Jones*, 17 *Wendell*, 81. But to hold it conclusive in this proceeding, would be nothing less than saying, that the will of the electors, plainly expressed in the forms prescribed by law, may be utterly defeated by the negligence, mistake or fraud of those who are appointed to register the results of an election. There is no ground in this case for imputing any intentional wrong either to the town inspectors, or the board of county canvassers. But if we cannot look beyond the certificate, for the purpose of correcting an error produced by negligence or mistake, we cannot interfere in a case of fraudulent misconduct on the part of the board of canvassers. In those legislative bodies, which have the power to judge of their own members, it is the settled practice, when the right of the sitting member is called in question, to look beyond the certificate of the returning officer ; and I think a court and jury, with better means of arriving at truth, may pursue the same course.

When the town inspectors have completed their canvass and statement, and the poll lists and ballots have been destroyed, the statute declares, that the board of inspectors shall be dissolved. 1 *R. S.* 138, *s.* 51. There is, perhaps some difficulty in saying that the board of inspectors in *Monroe*, was legally assembled on the 14th November, when the addition was made to the original statement of the votes given in that town. But it is not necessary to examine that question. Conceding that the *county canvassers* decided correctly on the facts before them, I think *we* are bound in this proceeding to go back to the town canvass, and rectify the error in the statement of the inspectors. We are. not called upon to say, that every possible question which may

arise under the election laws, can be reviewed in this form. In this case, the votes in *Monroe* were regularly canvassed, and the inspectors set down on what they called a canvass sheet, the number of votes given to each of the candidates for the office of clerk. But in making their official statement, after stating the whole number of votes, they omitted by mistake to add how many were given to each of the persons voted for by the electors. There is no dispute about the facts ; and if the court can ever look beyond the certificate of the returning officers, we certainly must do so in this instance.

If the votes in *Monroe* are added to those given in the other towns of the county, the relator was duly elected clerk, for the term of three years from the 1st of January, 1838.

But there is still a difficulty of some importance in this case. The defendant was an incumbent of the office at the time of the election in 1837, and although his original term expired with that year, he might still continue to discharge the duties of the office until a successor should be duly qualified. 1 *R. S.* 117, *s.* 10. As the relator had failed to obtain from the proper officers a certificate of his election, there was no evidence upon which the defendant was bound to surrender the office. It is then said, that the defendant was in the rightful exercise of the office on the 6th January, 1838, when the information was filed, and consequently that this proceeding cannot be maintained. Although there is force in this reasoning, especially as the defendant may be subjected to costs and damages, should the judgment be against him, 2 *R. S.* 582, § 34, 38, p. 585, § 48 ; yet I think the argument proves too much. If the relator could not take the necessary legal measures for asserting his title on the 6th January, he could never do it, and the defendant might continue to hold until the next triennial election, and thus defeat the relator altogether.

It is said that the information should not have been filed until after the 15 days had elapsed for taking the oath of office. 1 *R. S.* 119, § 21. How would the case have stood then ? Had the defendant neglected to take the oath within the 15 days, his

title to the office, so far as relates to the election of 1837, would have been at an end. 1 *R. S.* 122, § 34. *The People* v. *Jones,* 17 *Wendell,* 81. But his right to hold over until a successor was duly qualified, would still remain. This was an office which ought not to be left vacant, and the relator could only enter after obtaining the judgment of this court in his favor. 2 *R. S.* 582, § 32. Had the filing of the information been delayed until the fifteen days had elapsed, and the defendant had neglected to take the oath within that time, the argument that he was in the rightful exercise of the office, would then have been just as cogent as it is now ; and I repeat, that it proves too much. It amounts to nothing less than saying, that although the relator has a perfect title to the office, the means of enforcing it have not been provided by law.

The defendant did in fact take the oath of office on the 15th of January, and from that time he held under the election of 1837. Had the information been filed after that day, it would still have been true that the defendant was in the rightful exercise of the office. He was in under lawful authority, and there was only one mode in which the relator, or any one else, could question his title. This brings us to what I think the true solution of the supposed difficulty. This is a proceeding in which the right to an office may be tried. The information will lie not only where the defendant has obtruded into the place without any color of right, but where he has entered under competent legal authority. It reaches beyond those evidences of title which are conclusive for every other purpose, and enquires into and ascertains the abstract question of right.

It was conceded on the argument, that the defendant has acted in perfect good faith in retaining the office. Whether under such circumstances he can be subjected to the payment of damages, should they be claimed, is a question which we are not now called upon to decide. Should the right of the relator to recover damages be the necessary consequence of our judgment, cases of this description may call for some new legislation. But on the present occasion we have nothing to do with consequences.

Our office is discharged when we pronounce judgment upon the matter of right. The relator was duly elected, and is entitled to the office.

Judgment for the People.