450   People ex rel. McLaughlin *v.* Police Comrs.   [April,

Statement of case.   [Vol. 174.

The People of the State of New York ex rel. James
McLaughlin, Respondent, *v.* The Board of Police Com-
missioners of the City of Yonkers et al., Appellants.

1. Public Officers — Erroneous Exclusion of Evidence Tending
to Establish Acquiescence ·in Removal from Office in a Pro-
ceeding by Mandamus — Waiver.   Assuming that a police captain,
who, alleging that he has been unlawfully retired on a pension, brings a
mandamus proceeding to secure his reinstatement, is entitled to have the
title to the position which has been filled by the appointment of his suc-
cessor determined·in such proceeding, the exclusion of evidence showing
(1) his failure to protest against the action of the police commissioners in
retiring him for three months and ten days, well known the ground
thereof; (2) his receipt of pension money in the interim; (3) the surrender
of the police paraphernalia; (4) that he promptly sought and obtained
employment elsewhere; (5) that he kept silent, although aware of the fact
that steps were being taken to fill his place which would be likely to further
embarrass legal proceedings taken to reinstate him, constitutes reversible
error, since such evidence would permit a finding of fact that the relator
acquiesced in the action of the police commissioners and accepted the
benefit secured to him, a pension for life, equal to one-half of his salary,
intending to waive any legal claim he had to the office.

2. Title to Public Office Cannot Be Tried in Mandamus Pro-
ceeding, Even Assuming That no Serious Question Exists as to
Relator's Title.   The relator's title to the office, however, cannot be
determined in such proceeding.   Assuming that there is no serious ques-
tion as to his title to the office that fact does not except him from the gen-
eral rule that when some one is in actual possession of an office under
color of right mandamus will not lie to determine the title, but a direct
action must be brought by the attorney-general for that purpose, since
such an exception if once created would destroy the rule, rendering uncer-
tain that which is now certain.

3. Authorities Collated — Obiter Dicta.   The authorities upon
the subject collated and discussed, and the fact that in several cases in
addition to the decision that mandamus would not lie, the court in the
course of its argument made use of the expression that a writ of man-
damus should not issue where there is a serious question in regard to the
title, is not entitled to the force and effect of a decision that in cases
where there is no serious question in regard thereto mandamus will lie,
where such expressions were not necessary to the decisions and were
clearly *obiter*.

4. Incumbent of Office Not Deprived of Insisting upon Proper
Remedy Because of Intervention in Mandamus Proceedings.   The

fact that the incumbent of the office and others to be ultimately affected intervened in such proceedings, does not deprive them of the right to insist that the relator did not select the proper remedy, because the denial of a mandamus in such cases does not depend upon the fact that the parties affected were not before the court; on the contrary, in some of them they were parties defendant, but upon the fact that a common-law mandamus can only issue where there is a clear legal right to the office or thing prayed for, and it will not be granted where a party has another specific legal remedy, which in this case is a direct action to be brought by the attorney-general.

*People ex rel. McLaughlin* v. *Police Comrs.*, 79 App. Div. 82, reversed.

(Argued March 6, 1903; decided April 28, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 17, 1903, upon an order which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel the defendant police commissioners to reinstate the relator as a captain in the police force of the city of Yonkers.

The facts, so far as material, are stated in the opinion.

*Isadore J. Beaudrias,* for board of police commissioners, appellant. When the resolution of the police board was passed, retiring the relator, he knew his rights, and with full knowledge of the facts, returned his shield, keys and other police property, accepted his salary as police captain up to the time of his retirement, and his pension money thereafter, and sought another position. This was a complete ratification and acquiescence in the action of the commissioners. (Bigelow on Est. 679; *Rodemund* v. *Clark,* 46 N. Y. 354; *Matter of Peaselee,* 73 Hun, 113; *Chipman* v. *Montgomery,* 63 N. Y. 234; *Mills* v. *Hoffman,* 92 N. Y. 181; *Vose* v. *Cockcroft,* 44 N. Y. 445; *Dodge* v. *Cornelius,* 168 N. Y. 242; *Ferguson* v. *Landran,* 5 Bush, 230; *Mayor* v. *M. R. R. Co.,* 143 N. Y. 1) Where there is no fund to pay back salary, the relator cannot obtain such relief by peremptory mandamus. (*People ex rel.* v. *O'Keefe,* 100 N. Y. 576; *People ex rel.* v. *Bd. of Education,* 60 Hun, 486; *Matter of Grady,* 15 App. Div. 504;

Code Civ. Pro. § 2080; *People ex rel.* v. *Clausen,* 50 App. Div. 286.)

Theodore H. Silkman and John H. Wilson for Frederick H. Woodruff et al., appellants. Mandamus is not the remedy by which justice and equity and the rights of the different parties can be adjudicated in this case. (*People ex rel.* v. *Sing Sing,* 54 App. Div. 555; *Dempsey* v. *N. Y. C. & H. R. R. R. Co.,* 146 N. Y. 290; *People* v. *Stevens,* 5 Hill, 616; *Matter of Gardner,* 68 N. Y. 467; *People ex rel.* v. *Brush,* 146 N. Y. 60; *People ex rel.* v. *Goetting,* 133 N. Y. 569; *People ex rel.* v. *N. Y. I. Asylum,* 122 N. Y. 190; *Nichols* v. *McLean,* 101 N. Y. 526; *People ex rel.* v. *Vail,* 20 Wend. 12–16; *People ex rel.* v. *Lane,* 55 N. Y. 217.) The relator, by accepting and acquiescing in the action of the board of police in retiring him as police captain and putting him upon the pension roll of the police pension fund, and by remaining quiet and permitting the office of captain to be filled and other offices to be filled which were dependent upon the vacancy of the office of captain, has waived and is estopped from asserting any infirmity in the action of the board of police in retiring him from the office of police captain. (*Mayor, etc.,* v. *M. R. R. Co.,* 143 N. Y. 1; *W. & W. Mfg. Co.* v. *Elberson,* 84 Hun, 501; *People ex rel.* v. *Suprs. of Cayuga Co.,* 17 N. Y. Supp. 314.) The court erred in its rulings upon the trial. (*People ex rel.* v. *Clausen,* 163 N. Y. 523.)

James M. Hunt for respondent. The relator's application for a writ of mandamus to reinstate him in his office and position was made in due time. (*People ex rel.* v. *Lantry,* 48 App. Div. 131; *McMahon* v. *Mayor, etc.,* 22 App. Div. 13; *People ex rel.* v. *Board of Police,* 75 N. Y. 38; *Kehn* v. *State,* 93 N. Y. 291; *Clark* v. *State,* 142 N. Y. 101.) Under the facts established by this record mandamus was the proper remedy. (*People ex rel.* v. *Brush,* 146 N. Y. 60; *People ex rel.* v. *Goettig,* 133 N. Y. 567; *Matter of Gardner,* 68 N.

1903.] People ex rel. McLaughlin v. Police Comrs. 453

N. Y. Rep.]    Opinion of the Court, per Parker, Ch. J.

Y. 467; *People ex rel.* v. *Lane,* 55 N. Y. 217.) No error was committed upon the trial at Circuit under the alternative writ of mandamus. (*People ex rel.* v. *Board of Police,* 75 N. Y. 38; *People ex rel.* v. *French,* 91 N. Y. 265; *People ex rel.* v. *Police Comrs.,* 114 N. Y. 245; *People ex rel.* v. *Treanor,* 15 App. Div. 508; *People ex rel.* v. *Comptroller,* 77 N. Y. 45; *Van Dolsen* v. *Board of Education,* 162 N. Y. 446, 452; *Williams* v. *F. Nat. Bank,* 167 N. Y. 594; *F. Nat. Bank* v. *Dana,* 79 N. Y. 108; *McMahon* v. *Mayor, etc.,* 22 App. Div. 113; *Kehn* v. *State,* 92 N. Y. 291.)

Parker, Ch. J.  On August 17, 1901, the board of police commissioners of the city of Yonkers — being in possession of the fact that James McLaughlin, then captain of police, had, when he became a member of the metropolitan police force, filed a sworn statement setting forth his name, date and place of birth and other matters, from which it appeared that he was, on August 17, 1901, 60 years of age — assumed that, because he had reached that age, it had the statutory authority to place him upon the retired list, and passed a resolution "that Captain James McLaughlin be relieved and retired from the force of the Police Department of the city of Yonkers, New York, and placed on the roll of the Police Pension Fund at an annual pension of $1,200, payable monthly during his lifetime. This resolution to take effect at 6 P. M., roll-call, August 17, 1901."

McLaughlin testifies that the following day he went to the police headquarters to get his things and to straighten up, and a day later, August 19, he personally delivered at the desk in the station house his book of rules, revolver, etc., with the following statement in his own handwriting: "Returned by James McLaughlin."

At the end of the month McLaughlin received his salary to August 17th, and for the rest of the month $47.50 out of the pension fund, and gave his receipt therefor. Thereafter until the trial he received and receipted for his pension at the rate of $100 per month.

November 27th following McLaughlin filed with the police commissioners a protest in writing, which was the first protest he had made to that board or any member of it. Two days later he filed a petition for a peremptory writ of mandamus directing his reinstatement, asserting therein that he was but 58 years old.

An order for an alternative writ of mandamus was granted, to which the police commissioners made a return denying that McLaughlin was only 58 years old on August 16, 1901, and alleging that he became 60 years of age on that date; that McLaughlin did not protest to the board of police or any member of it against the resolution of retirement nor ask to be reinstated until the written request and protest of November 27th; that without protest or qualification he received his salary to August 17th and the pension moneys thereafter, for the rest of August and for September, October and November; that such pension fund is not created or recruited by taxation, but constitutes a fund of which the board of police are only trustees; that nearly three weeks after the retirement of McLaughlin, and some days after he had accepted his salary and portion of the pension fund without protest, Frederick H. Woodruff, then a sergeant, was duly appointed captain, and entered upon and has since discharged the duties of said office; and, on information and belief, that all these facts, including the changes and promotions, were well known to McLaughlin at the time they occurred.

Five men promoted after the retirement of McLaughlin — Woodruff, Cooley, Brady, Connolly and Shea — made application for leave to intervene and file a return to said alternative writ. Their application was granted and they made return denying relator's statement as to his age, and the allegation that his removal was illegal, and alleging that McLaughlin was retired and placed on the roll of the police pension fund; that said relator accepted such retirement, and accepted without protest, and receipted for his salary to August 17, 1901, and his pension thereafter; that, relying upon the action of the board of police commissioners in retiring relator, and

1903.] People ex rel. McLaughlin v. Police Comrs. 455

N. Y. Rep.]    Opinion of the Court, per Parker, Ch. J.

upon his acceptance of such retirement, Woodruff, then sergeant, applied for the position of captain, and was duly appointed; that the promotion of Woodruff and the retirement of one Wilcox, a former sergeant, left two vacancies in the office of sergeant, which defendants Cooley and Brady were appointed to fill from the rank of roundsmen; that the latter appointment left two vacancies in the rank of roundsmen, which defendants Connolly and Shea were appointed to fill; that since that date all such defendants have filled those respective offices and received the salaries thereof.

It will be seen that four specific issues were raised by the alternative writ and returns thereto:

*First.* What was McLaughlin's age?

*Second.* Assuming that McLaughlin was illegally removed, did he by his acts and conduct waive his right to be reinstated?

*Third.* Was the office to which he was seeking reinstatement by mandamus actually in the possession of another, exercising the duties and receiving the salary thereof?

*Fourth.* Was there any fund from which to pay the relator's claim for salary?

When the trial before the jury was at an end counsel for relator and counsel for defendants each moved for a direction of a verdict, which was denied, the court concluding to take a verdict on the question of McLaughlin's age, suggesting that the legal questions presented by the motions addressed to the court should be reserved. Thereupon relator's counsel said: "Legal questions upon the whole case? The Court: The legal questions presented by the motion as made by respondent's counsel." Whereupon relator's counsel said: "Well, upon that, if your Honor please, I can present other proof to the Special Term upon their alleged claim of waiver, and for that reason I have contended, and still insist, that the only issue before the jury now and before this court at this time is as to age. Whatever other propositions may be asserted upon the case in relation to the whole of the rest of the case upon the captain's application for reinstatement will be asserted in

a form that can be met by me.   I came here to try only the question of age.   The Court : In view of Mr. Hunt's attitude I will deny your motion on the part of respondent and give you an exception upon each ground, and then you may move after rendition of verdict."

The jury found that McLaughlin was only 58 years of age at the time of his removal, and later on defendants made a motion, founded in part upon affidavits, to dismiss the alternative writ, which was denied.   The court at Special Term, however, refused a peremptory mandamus at that time in order to permit the issue tendered by the return — that relator accepted and acquiesced in his retirement — to be sent to the Trial Term to be determined in a trial by jury.   But the judge at the Trial Term refused to try that issue and granted a peremptory writ of mandamus.

Now — if it be true, as contended by the learned counsel for relator, that "nothing short of an absolute release, signed and sealed, or a written resignation, executed and delivered by the relator and accepted by the police board, under the circumstances shown in this record, would have operated as a matter of law to destroy his right to the office of police captain of the city of Yonkers" — then no injustice has been done defendants by excluding evidence tending to show acquiescence by relator, and waiver of any claim of right, by omitting to submit to the jury the issue thus sought to be raised.

I take it, however, that this claim of counsel does not accurately state the law on that subject.   It is well settled by authority that a man may waive any right that he has, whether secured to him by contract, conferred upon him by statute or guaranteed him by the Constitution.   (*Embury* v. *Conner*, 3 N. Y. 511; *Matter of Cooper*, 93 N. Y. 507; *Matter of N. Y., L. & W. R. R Co.*, 98 N. Y. 447; *Mayor, etc., of N. Y.* v. *Manh. Ry. Co.*, 143 N. Y. 1.)

And if the statements in the returns constitute an accurate presentation of all the facts and circumstances surrounding the retirement of McLaughlin, and of his conduct and that of the police commissioners down to November 27th, a period of

3 months and 10 days, they would permit, in my judgment, a finding of fact that relator acquiesced in the action of the police commissioners, and accepted the benefit secured to him — a pension for life, equal to one-half of his salary — intending to waive any legal claim he had to the office.

I am unable to find in the record the contradiction of any allegation in the returns bearing upon this issue except the statement of McLaughlin that he protested orally to the clerk when, on August 31st, he received a check for the balance of his salary and another for his pension. McLaughlin does not say he ever protested to any member of the police board until two days before the commencement of this proceeding, or handed the clerk a protest in writing, or requested him to notify the board that he was not satisfied; but, according to his own statement, he contented himself by saying to the clerk that he protested, and asking him if it was necessary to put it in writing, all of which the clerk is unable to recollect.

This issue between the clerk and McLaughlin would have been for the jury to pass upon, and it cannot now be said that it would not have been passed upon in favor of defendants had the court admitted other important evidence which defendants offered in support of this issue. The court refused to allow defendants to prove that Woodruff had been appointed captain; that McLaughlin had been appointed a deputy by Superintendent McCullough, and other facts tending to establish that he acquiesced in the action of the police board until the rights of others and of the public had intervened.

McLaughlin was asked: "And you have since that time been employed as a deputy by Superintendent McCullough? Objected to as immaterial, irrelevant and incompetent. Objection sustained. Exception." The same objection, ruling and exception followed each of the following questions: "And did you receive payment for your services in that employment?" "How long after the retirement, as alleged, was it before your successor was appointed?" "Did you know that they were about to appoint a captain in your place on the 6th day of September, 1901?" "Did you read

in the *Statesman* of September 6th, 1901, giving notice of a civil service examination for the purpose of obtaining a list to appoint a captain of police from ? "

If he intended to insist that the office was his as matter of right, can there be any doubt that it was his duty to notify the police commissioners and those seeking the position of his intention ? Would not his experience also have advised him that it was wiser to do so ?

Again taking up the questions excluded under defendants' exception as above, we quote questions asked of Commissioner Treanor : " After the resolution that you have read by the Board of Police of the city of Yonkers, what action did the board take in regard to filling the vacancy of captain ? " " Did you know prior to September 1st, 1901, of the surrender by Captain McLaughlin of his keys and the written memorandum which was made and offered in evidence here ? " " Did you after September 1st, 1901, make any appointment of captain in the place of Captain McLaughlin, retired ? " " Up to what time did you ? " " When was Captain Frederick H. Woodruff appointed captain of police ? " " Will you turn to the appointment of a captain in the place of Captain McLaughlin ? " " Was there any action taken by the Board of Police of the city of Yonkers to fill the office of captain after the retirement of Captain McLaughlin ? " " Is there any fund with which to pay the salary claimed by the relator ? "

The facts relied upon to prove relator's acquiescence in the action of the police commissioners, and waiver of any legal rights were (1) his failure to protest against the action of the board for 3 months and 10 days, well knowing the ground of removal; (2) his receipt of pension money in the interim ; (3) the surrender of the police paraphernalia; (4) promptly seeking and obtaining employment elsewhere ; (5) silence on his part although aware of the fact that steps were being taken to fill his place, which would be likely to further embarrass legal proceedings taken to reinstate him.

Many of the above questions would have invoked answers

tending strongly to establish some facts which defendants claimed existed, and upon which reliance was based. And for the error committed in excluding the answers a new trial should be had, even if it be true, as asserted by relator, that he is entitled to have it adjudged in this proceeding whether he is entitled to the office of police captain of the city of Yonkers, an office now held by Captain Woodruff under claim of right.

The claim that this is the proper proceeding in which to seek a determination of relator's claim does not, however, have support in authority in this state, for as long ago as the decision in *People ex rel. Hodgkinson* v. *Stevens* (5 Hill, 616) it was held that where title to an office is in dispute the proper method of trying it is by information in the nature of a quo warranto, which since the Code is by a direct action instituted by the attorney-general. The proceeding was by a mandamus to compel a person claiming to be clerk of the common council of Brooklyn to deliver up the books and papers to relator, who insisted that he had been duly appointed and had taken the oath of office. An alternative writ of mandamus was granted on behalf of relator setting forth that he was duly appointed clerk of the city of Brooklyn in May, 1843, and had taken the oath of office but had been unable to gain possession of the office and the books and papers from the respondent Stevens. To this writ Stevens returned that he was duly appointed and sworn in as clerk of the city of Brooklyn in May, 1842; that he immediately entered upon the duties of his office and has continued to discharge them ever since, and that by the city charter his term of office did not expire until another clerk should be appointed in his place; and then he returned the facts attending the alleged election of relator as clerk, which he claimed showed that relator had not been appointed to the office; and thereupon insisted that his own term of office had not expired. The relator demurred to the return, insisting that the facts stated therein showed that he had been duly chosen clerk. All of the facts, therefore, relating to the title to the office were before the court. But the court gave judg-

ment for defendant on the demurrer, holding that the title to an office was in dispute ; that the only mode for trying it was by an information in the nature of a quo warranto, and that the court would not determine the question on mandamus. Judge BRONSON said : " This is professedly a proceeding to put the relator in the possession of the books and papers belonging to the office of the clerk of the city of Brooklyn. It is in fact a proceeding to try the title to an office, both parties claiming it, and the defendant being in possession." This is a leading case on the subject, and has been cited with approval in nearly all the cases in which the question was presented, that have followed it.

In *People ex rel. Benton* v. *Vail* (20 Wend. 12) the proceeding was on information in the nature of a quo warranto, where the relator and defendant were opposing candidates for the office of county clerk, the defendant being in under a former election and holding a certificate of election from the county canvassers. It was held that relator was entitled to the office, and in the course of the opinion the court said of defendant : " He was in under lawful authority, and there was only one mode in which the relator, or any one else, could question his title."

In *People ex rel. Dolan* v. *Lane* (55 N. Y. 217) relator had held for some time the office of assistant clerk of the Sixth District Court under an appointment by the justice thereof. The said justice, claiming to possess the requisite power, removed relator from his office and appointed one Keating, who took possession of the office and was exercising the powers and discharging the duties of the same when relator filed the petition asking for a mandamus to compel defendants to make and deliver a certificate for the payment of salary. The Special Term denied the motion. The General Term reversed its decision and directed the mandamus to issue. This court said that the removal of relator and appointment of Keating was under color of law, and the legality thereof depended upon the construction of a statute framed in such ambiguous language as to render its interpretation

difficult. After discussing the situation, the opinion concluded as follows: "Indeed, it is doubtful whether the title to an office ought ever to be tried collaterally on proceedings by mandamus instituted in behalf of a party out of possession. (*People ex rel. Hodgkinson* v. *Stevens*, 5 Hill, 616, 627.) After a careful examination of the various statutes bearing upon the subject, we think that the legality of the removal of the relator is not so clear that we can dispose of the case against him upon the merits; but we think, for the reasons already stated, that the motion should have been denied on the ground that mandamus is not the proper remedy, and without prejudice to any other proceeding which may be instituted to try the title to the office."

In *Matter of Gardner* (68 N. Y. 467) the petition of the applicant for the writ of mandamus set forth, in substance, that he was duly elected an alderman of Brooklyn and entered upon the discharge of the duties of such office; that as such alderman he was *ex officio* supervisor; that under a subsequent statute one Henry P. Coates had received a certificate of election as supervisor and was recognized as such by the clerk of the board of supervisors; that the statute under which Coates claimed to be elected was in violation of the State Constitution and void; and that before commencing this proceeding relator had applied to the attorney-general to commence proceedings by quo warranto to try his title to the office, which had been refused. This court held that mandamus should be refused, and in the course of the opinion said that it was settled at a very early period in the judicial history of the state "that when a person is already an officer by color of right the court will not grant a mandamus to admit another person who claims to have been duly elected, and that the proper remedy is by an information in the nature of a quo warranto. (*People ex rel. Arcularius* v. *Mayor, etc.*, 3 Johns. Cases, 79.) This doctrine has since been approved and upheld by repeated decisions and has become settled law. (*People ex rel. Hodgkinson* v. *Stevens*, 5 Hill, 628, 629, and authorities cited; *Morris* v. *People*, 3 Denio, 396.) The rule is distinctly

asserted in the cases last cited that the only remedy to try a title to an office is by quo warranto, and to sustain the position of relator's counsel we would be compelled to overrule these adjudications."

*Nichols* v. *MacLean* (101 N. Y. 526) was an action to recover damages for the alleged unlawful usurpation of an office by defendant. Plaintiff's intestate, a police commissioner of New York, was unlawfully removed during his term and defendant was appointed in his stead. He assumed the duties of the office against the protests of intestate, who claimed the appointment was unauthorized. The proceedings of the mayor in removing intestate were reversed and annulled on certiorari, whereupon defendant surrendered the office and intestate was again officially recognized by the board and assumed the duties of his office. The court, Judge ANDREWS writing, carefully reviewed the procedure in such cases and pointed out that where the officer *de jure* has not been reinstated his remedy is by an action in the nature of quo warranto. He said: "The courts held that they would not at the instance of a person out of the possession of an office try the title to the office by mandamus or other proceeding, but would leave him to his remedy by information, and it has been said in several cases that the title could only be tried in that proceeding. (Citing *People ex rel. Hodgkinson* v. *Stevens, supra; People ex rel. Benton* v. *Vail, supra; People ex rel. Faile* v. *Ferris,* 76 N. Y. 326; *People ex rel. Dolan* v. *Lane, supra.*) These cases proceed upon an intelligible principle."

In *People ex rel. Nicholl* v. *N. Y. Infant Asylum* (122 N. Y. 190) the court — in affirming a decision denying mandamus where relator claimed to be entitled to the office of secretary of the board of managers, which was then in possession of another — cited with approval from the opinion of the court in *Matter of Gardner* (*supra*) the statement that "it was settled at a very early period in this state that when a person was already an officer by color of right, the court will not grant a mandamus to admit another person who claims to

have been duly elected, and that the proper remedy is by information in the nature of quo warranto." (Citing *People ex rel. Hodgkinson* v. *Stevens, supra; Morris* v. *People, supra.*)

In *People ex rel. Wren* v. *Goetting* (133 N. Y. 569) relator was appointed in 1881 clerk of the police court of the third judicial district in Brooklyn. In 1889 he was removed by the justice, and one Degnan was appointed in his stead. Relator then brought a proceeding against the police justice to compel him by mandamus to recognize him as the clerk, and entitled to hold said office. Relator claimed that as an honorably discharged soldier he could not be removed except for cause and after a hearing, relying upon section 299, title 22, ch. 583, Laws 1888. At Special Term it was held that such statute did not apply to the case of one whose position was that of a chief clerk of an official, but in this court it was said, Judge GRAY writing: "There is, however, this insuperable objection to the maintenance of this proceeding by the appellant, that mandamus is not the proper remedy in such a case. The office claimed is filled by another person, holding under color of right, and the question of title to the office turns upon the construction of statutory provisions. It would be highly inappropriate to determine such a question in a mandamus proceeding. The appropriate remedy, and an adequate one, is by information in the nature of a quo warranto, in which proceeding the incumbent of the office can be heard in his own behalf upon the disputed question. The rule must be regarded as well established by frequent decisions of the courts of this state that the writ of mandamus should be refused to aid the admission of a claimant into an office filled under color of law, and when the title to it presents a disputable question. (Citing *People* v. *Stevens, supra; People* v. *Lane, supra; Matter of Gardner, supra; Nichols* v. *MacLean, supra.*) High, in his work on Extraordinary Remedies (§ 49), considers such a rule to be 'established by a very overwhelming current of authority.'"

In *People ex rel. Lewis* v. *Brush* (146 N. Y. 60) relator

applied for a peremptory writ of mandamus requiring defendant Brush to surrender to relator the office of mayor of Mount Vernon, and that the other defendants, composing the common council, recognize him as mayor. He claimed that at the election in 1894 he received a majority of the votes lawfully cast for mayor, and that on the next day at the regular meeting of the common council the votes were duly canvassed and he was declared elected. In support of his petition he presented the certificate of the city clerk that a resolution to that effect was adopted by the common council, and the affidavit of defendant Brush that he conceded that the relator was duly elected. An affidavit of one of the defendants, an alderman, was heard in opposition, which denied that relator received a plurality of the votes. This court held that mandamus was not the relator's proper remedy, but that he should have resorted to an action under the Code in the nature of quo warranto, and, in addition to citing a number of authorities, already referred to, in support of the decision, quoted with approval the following from Mechem's Public Offices and Officers (§ 478): "The proceeding by quo warranto is a proper and appropriate remedy for trying and determining the title to a public office, and of ascertaining who is entitled to hold it; of obtaining possession of an office to which one has been legally elected and has become duly qualified to hold, and also of removing an incumbent who has usurped it, or who claims it by an invalid election, or who illegally continues to hold it after the expiration of his term."

In *Matter of Hardy* (17 Misc. Rep. 667) an application was made to compel the mayor of the city of Albany to restore the relator, Hardy, to an office from which he claimed to have been illegally ejected. His successor was a party defendant in the proceeding and was heard in his own behalf, and it was held, citing many authorities already referred to, that inasmuch as Hardy was in possession of the office under color of right, mandamus would not lie.

The learned counsel for relator has not brought to our attention any decision in this state holding that a mandamus

will lie where some one is actually in possession of the office under color of right, as is this defendant Woodruff, but he has called attention to expressions in opinions in four of the cases to which we have referred — *People ex rel. Lewis* v. *Brush*, *People ex rel. Wren* v. *Goetting*, *Matter of Gardner* and *People ex rel. Dolan* v. *Lane* — which he claims suggest an exception to the general rule, namely, that mandamus will lie where there is no serious question as to the title to the office, an exception which, if once created, would destroy the rule itself, rendering uncertain that which is now certain. If such an exception were established, no lawyer could safely advise his client whether his remedy should be by direct action brought by the attorney-general, or in a proceeding by mandamus. For while his examination of the situation might satisfy him that the question whether his client or one in possession of the office under a claim of right was entitled to the office was not a serious one, it would be impossible for him to know whether the courts would take that view of it, and the courts, too, would be without any standard by which to determine whether mandamus would lie or a direct action should be brought by the attorney-general, and hence would be compelled to adopt an arbitrary standard, in each case depending upon the point of view of the court called upon to decide it.

If it were an open question, an exception creating such a degree of uncertainty — which in each case could never be definitely determined until a majority of the court of last resort would express an opinion as to whether the question of right to an office was a serious one — should not be created. But it is not an open question, as will sufficiently appear from an examination of the authorities we have cited, including the four cases we have referred to as being relied upon by relator. In every one of those cases, as we have already seen, the court held that mandamus would not lie. That was the point of the decision and nothing else was decided. The fact that in addition to such decision the court in several cases in the course of its argument made use of the expression that a writ

30

of mandamus should not issue where there is a serious question in regard to the title, is not entitled to the force and effect of a decision, where it is not necessary to the decision, and is clearly *obiter.*

The argument of counsel as to the legal effect of the expression referred to in the cases under consideration is well met by the opinion of this court in *Colonial City Traction Co.* v. *Kingston City R. R. Co.* (154 N. Y. 493, 495), where it is said: " It was not our intention to decide any case but the one before us, which simply involved the standing of plaintiff to make the application in question, and our opinion should be read in the light of that purpose. If, as sometimes happens, broader statements were made by way of argument or otherwise than were essential to the decision of the questions presented, they are the *dicta* of the writer of the opinion and not the decision of the court."

It is suggested that Captain Woodruff and the other police officers, whose rights are ultimately to be affected by the determination of the questions suggested by this record, have in some way lost their right to insist that this question shall only be determined in that form of action which the courts have decided to be the proper one from the earliest period in the judicial history of this state to the present time — that by intervening to test relator's claim they have parted with the right to insist that he did not select the proper remedy. Such argument as can be made in support of that proposition necessarily proceeds on the theory that the remedy by mandamus has been denied in such cases always because the parties to be affected were not before the court, whereas the real reason is that common-law mandamus will only issue where there is a clear legal right to the office or thing prayed for; and it is also a general rule that mandamus will not be granted where a party has another specific legal remedy, and from the earliest times the legal remedy for trying the title to an office was by the writ of quo warranto, now a direct action brought by the attorney-general. In Blackstone's Commentaries it is said that " the writ of quo warranto was an ancient writ to

try the right to one holding a public office." (2 Bl. Com. 263.)

In the very first case cited by us, *People ex rel. Hodgkinson* v. *Stevens* (*supra*), the incumbent of the office which the relator was seeking to get possession of by mandamus was a party defendant. The same is true of *Matter of Hardy* (*supra*) and *People ex rel. Lewis* v. *Brush* (*supra*). This question is, therefore, settled by authority, for it is certainly unnecessary to argue that the defendants' rights are the same in such a proceeding as this one, whether they be brought in on their own motion or on motion of relator.

The judgment should be reversed and proceedings dismissed, with costs.

GRAY, O'BRIEN, MARTIN and WERNER, JJ., concur; BARTLETT and CULLEN, JJ., not voting.

Judgment reversed, etc.