## KIRK v. CITY OF NEW YORK.

(Supreme Court, Equity Term, Kings County.   December 31, 1910.)

MUNICIPAL CORPORATIONS (§ 220*)—EMPLOYÉS—COMPENSATION—WAIVER—ESTOPPEL.

A city employé, having, to escape an authorized removal or suspension, necessary because of lack of funds, and to avoid the hazard of not being re-employed within the year during which he' was permitted under the law to remain on the civil service list, voluntarily waived his pay for the rest of the year, is estopped to claim against his agreement.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 599–608; Dec. Dig. § 220.*]

Action by Benjamin C. Kirk against the City of New York.   Judgment for defendant.

See, also, 140 App. Div. 894, 125 N. Y. Supp. 1127.

Greene & Kreis (Emil Kreis, of counsel), for plaintiff.

Archibald R. Watson, Corp. Counsel, and James D. Bell and Sanders Shanks, Asst. Corp. Counsel, for defendant.

STAPLETON, J.   This action was brought in equity to set aside a' waiver or release executed by the plaintiff on the ground that the said waiver or release was secured by duress, coercion, and intimidation on the part of the then borough president of Brooklyn, Bird S. Coler, and to recover as incidental to equitable relief the sum of $75 as salary for certain days between October 1 and December 31, 1908, on which days the plaintiff did not work.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff was an attendant at a salary of $900 per annum in the Bureau of Public Buildings and Offices in the borough of Brooklyn.

The appropriation for salaries or wages for said department for the year 1908 was $260,021.75. For the year 1907, $317,159.75. The borough president applied for that amount for 1908.

On the 15th day of November, 1908, he called a meeting of all the employés of the Bureau of Public Buildings and Offices, and then and there explained that his appropriation was practically exhausted and he would have to lay off some of the employés, including the plaintiff, and send their names to the Civil Service Commission to be placed on a preferred list good for one year only (see section 43 of the Greater New York Charter [Laws 1901, c. 466]), unless they were willing to continue work and sign a release or waiver to the city, and that he would go to the Board of Estimate and Apportionment, or, if necessary, to the Legislature of the state of New York, to get the money to pay each one in full.

The borough president had on hand, October 1, 1908, $26,878.42; he was entitled to a credit on the September pay roll of $14.67; caused to be transferred from other appropriations, $13,644; and he obtained by the authorized issue of revenue bonds $26,356—making a total of $66,893.09. The total amount of the pay roll for October, November, and December, under the arrangement made with the employés of his office, was $66,736.34, and the balance at the close of the business year, December 31, 1908, was $156.75. Only by the reductions in the pay roll pursuant to the arrangement made between him and the employés was this balance made possible.

The plaintiff was informed of all the facts and was given a printed form of waiver or release, and he took it away and was to return it the next day signed, if he saw fit to sign it. The document was returned on the next day, November 16th, signed by the plaintiff. A similar document was signed by all the other employés in the Bureau similarly situated.

There was no evidence in the case of duress, coercion, or intimidation, or from which duress, coercion, or intimidation could be inferred. The plaintiff, with the knowledge of all the facts, to serve what he conceived to be his own best interests, to escape the authorized removal or suspension, and to avoid the hazard of not being re-employed within the year during which he was permitted, under the law, to remain upon the civil service eligible list, signed the following paper:

City of New York, Borough of Brooklyn.

The appropriation for "maintenance of buildings and offices, salaries and wages" in the Bureau of Public Buildings and Offices during the current year (1908) having been so far already spent that at this date there remains available for the remainder of the year only about the sum of $6,000, an amount which is but a fraction of what would be required to pay the salaries and wages of the employés concerned at the rates heretofore prevailing; and, it being necessary, because of the insufficiency of the fund available, either to dismiss (and wholly deprive of income) a large proportion of the employés in question, leaving only so small a force that the maintenance of the public buildings and offices must be seriously and dangerously crippled, or to utilize said existing balance (and such other moneys if any as may become available

in accordance with the law) for the equal payment of as many of the members of the force as shall freely and expressly consent and agree that for any and all service by them respectively rendered between the date hereof and the first day of January, 1909, they shall respectively have, receive and be entitled to no compensation or pay other or greater than simply about one equal share each of the amount which the borough president shall have in his hands legally available for the purpose:

Now, therefore, I, the undersigned, being one of the said employés in question (to wit, a bath attendant) in consideration of the above-mentioned condition, and of my being retained under such circumstances in the list of employés of said Bureau upon the terms indicated (instead of being wholly dropped from said list and reported to the Civil Service Commission as no longer in the service), do hereby, and for my heirs, executors, administrators or assigns, freely and expressly consent, promise and agree that for any work, labor or service by me to be done or rendered, as such employé of said Bureau, in or about the maintenance of the public buildings and offices of the borough, or otherwise, I am to have, receive, or be entitled to, no pay, salary, wages, or compensation, other or greater than simply about one equal share of the amount which the borough president shall or may have in his hands legally available for the purpose; and I hereby waive, release and surrender any and all actual or possible right or claim to demand, receive or recover from the city of New York, or the borough of Brooklyn, or any of the officials or representatives of said city or borough, any amount whatsoever as, for or on account of any such pay, salary, wages or compensation for any such service by me, as such employé, during the remainder of the year 1908.

Name: Benjamin C. Kirk,
Address: 856 Hart Street, Brooklyn.
Title: Bath Attendant.
Date November 16th, 1908.
Witness J. F. Hamilton.

The following language of the Appellate Division (Downs v. City of New York, 75 App. Div. 423, 425, 78 N. Y. Supp. 442, affirmed 173 N. Y. 651, 66 N. E. 1107) is so pertinently descriptive of the situation presented in this case that it may well be adopted for the purpose of disposing of the plaintiff's contention:

"His consent to the arrangement was purely voluntary and in no sense compulsory, and made under circumstances conclusively showing that he fully understood the necessity that required the arrangement to be made. Every consideration of equity, morality, and propriety requires he should be regarded as estopped from claiming adversely to his deliberate agreement."

In Ryan v. City of New York, 177 N. Y. 271, 279, 69 N. E. 599, 602, the court said:

"Now, 'it is well settled by authority that a man may waive any right that he has, whether secured him by contract, or conferred on him by the Constitution.' People ex rel. McLaughlin v. Board of Police Commissioners, 174 N. Y. 450–456 [67 N. E. 78, 95 Am. St. Rep. 596], and cases cited."

See, also, Emmitt v. Mayor, 128 N. Y. 177, 28 N. E. 19; Driscoll v. City of New York, 78 App. Div. 52–55, 79 N. Y. Supp. 479.

Judgment may be entered for the defendant on the merits.