THE PEOPLE OF THE STATE OF NEW YORK ex rel. PATSY BATTISTA, Respondent, *v.* FRANK L. CHRISTIAN, as Superintendent of the New York State Reformatory at Elmira, Appellant.*

Third Department, June 22, 1928.

* Revg. 131 Misc. 411; revd., 249 N. Y. 314.

Albert Ottinger, Attorney-General [Almon W. Burrell, Assistant Attorney-General, of counsel], for the appellant.

Dennis W. Hunt, for the respondent.

Urbane C. Lyons, District Attorney [Frank L. Wooster of counsel], amicus curiæ.

DAVIS, J.   Prior to 1925 section 222 of the Code of Criminal Procedure provided that all crimes prosecuted in Supreme Court, County Court or a City Court must be by indictment.   In 1925 (Chap. 597) there were added to the section provisions that where a defendant had been held to answer to any of these courts, the court might on application in writing of the defendant direct an information to be filed against him for the offense for which he stood charged, and that the district attorney should file such information.   A further slight amendment was made in 1927.   (Chap. 597.)   It is common knowledge that many persons charged with crime have elected to be prosecuted in the manner so prescribed, and have been sentenced.

Patsy Battista with another had been arraigned in the Police Court of the village of Endicott, Broome county, charged with the crime of burglary in the third degree.   They were held by the Police Court to answer to the Supreme Court.   Battista petitioned that court to have an information filed against him pursuant to the statute as amended.   The court made the order requested, an information was filed and he was duly arraigned on March 4, 1927. He pleaded guilty to the crime as charged and was sentenced to be confined in the State Reformatory at Elmira.

This proceeding of habeas corpus has been instituted by a brother of the prisoner.   On a hearing the writ was sustained and the defendant discharged on bail, on the ground that the statute violated the provisions of section 6 of article 1 of the Constitution of this State,

and was, therefore, void. That section provides, so far as is material here, that "No person shall be held to answer for a capital or otherwise infamous crime * * * unless on presentment or indictment of a grand jury. * * *."

The opinion in the court below is found in 131 Miscellaneous, 411. With the greatest respect for the reasoning of the learned justice, we are led to a different conclusion. The question is one of first impression in an appellate court in this State; nor is there pertinent authority in other jurisdictions except in New Jersey, where the constitutionality of a somewhat similar statute was sustained. (*Edwards* v. *State*, 45 N. J. Law, 419.) It must be determined by reason and analogy, keeping in mind not only the purpose of the law but the conditions that led to its enactment.

The whole scheme of criminal prosecution and punishment as manifested in constitutional provisions and early statutes, is a product of history and social conditions. It goes back to the time of the pioneer when, as Dean Pound says in " The Pioneers and the Law," in establishing and developing a general system of administering justice, one problem was " to devise a criminal law and criminal procedure sufficient to deal with the occasional criminal and the criminal of passion in a homogeneous community, of vigorous pioneer race, restrained already for the most part by deep religious conviction and strict moral training." (The Spirit of the Common Law, p. 115.) The makers of constitutions had fresh memories of harsh, brutal and oppressive measures taken against those charged with crimes during a period when capital punishment was common for comparatively minor offenses. Their purpose was to protect the individual and limit the exercise of jurisdiction of the courts by mechanical rules. (Id. 122.) So we may account for the strict provisions intended for the protection of men charged with crime. These fundamental constitutional provisions have persisted, although times and social conditions have changed. No longer are we a homogeneous people of great self restraint with only occasional offenders. There is a new criminal class. Crime has greatly increased. It has become a business, and frequently links itself with public officials and with those professing respectability. No longer is there grave danger of harshness and injustice to one deliberately engaging in criminal conduct. Now it is society which needs to be protected.

These matters are mentioned, not to justify the sweeping away of constitutional safeguards, but to throw light on the purpose and the efforts of legislators in these days to cope with the increase in crime, and a still greater increase in avenues of escape for the criminal. The inventions and discoveries which have contributed

to the comfort and enjoyment of respectable society have made crime more profitable and the chance of detection more difficult. In our courts the constitutional provisions intended mainly as protection for the innocent, are now frequently used as a shield for the guilty. Those conditions should not be extended by too strict an interpretation of remedial laws. All these matters have been the subject of recent investigation by the Legislature, and the conditions discovered and the remedies proposed are matters of public information.

One constant criticism of our system of criminal procedure has been of the delay permitted between the commission of crime and the resulting punishment. We need not pause to show that some part of it is unfounded, and to state that there must of necessity be time for investigation, fair trial and deliberate review. Here we are dealing only with the case of one who admits his guilt, wishes to obviate delay and begin his period of reparation. The statute deals with nothing else. The accused person has his option to follow the regular course prescribed by Constitution and statute, or waive that right and adopt a more summary and expeditious method. If he is cajoled into taking the latter course by fear, false promises, trickery or fraud, or without the advice of counsel, it presents merely a question of fact and relief can be afforded. No question of absolute constitutional right is then involved. It is only a failure to observe fairly the statutory requirements. If the permissive procedure is adopted voluntarily, he is not harmed; he is treated exactly as he would have been after indictment, arraignment and plea of guilty.

The question here is one of waiver. May a person charged with crime waive certain constitutional rights? In civil actions a party may waive the private rights guaranteed to him by Constitution and statute, although, of course, he cannot by his consent affect the rights of the public. In *Matter of N. Y., L. & W. R. R. Co.* (98 N. Y. 447) EARL, J., says (p. 453): " Parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce. They may stipulate away statutory, and even constitutional rights * * *; and all such stipulations not unreasonable, not against good morals or sound public policy, have been and will be enforced; and generally, all stipulations made by parties for the government of their conduct, or the control of their rights, in the trial of a cause, or the conduct of a litigation, are enforced by the courts." (See, also, *People ex rel. McLaughlin* v. *Police Commissioners,* 174 N. Y. 450, 456; *Musco* v. *United Surety Co.,* 196 id. 459.)

The doctrine of waiver in a criminal case does not greatly differ from the rule just stated. In neither case can a party by consent confer jurisdiction on a court which has none. Where the statute is permissive rather than compulsory, a choice offered to a defendant which he may accept or reject does not infringe his constitutional rights. (*Connors* v. *People,* 50 N. Y. 240; *People* v. *Courtney,* 94 id. 490, 493. See, also, *People* v. *Rosenheimer,* 209 id. 115.) Likewise, a party may waive immunity and be called as a witness before the grand jury. So we may say there is a general rule that a constitutional provision for the benefit of a prisoner may be waived. (*People* v. *Gowasky,* 244 N. Y. 451, 463; *People* v. *Sugarman,* 248 id. 255.)

The statute gives to a defendant the right to elect how he will be prosecuted. Primarily it is intended for his benefit. He may stand on his constitutional rights and require that before he is held to answer, an indictment shall be found. Better than any one else he knows whether he is guilty of the crime of which he stands charged. If he prefers to set the machinery of administrative justice in motion and reach a speedy determination as to what punishment he will suffer, rather than lie in jail awaiting the ordinary course of events, he may exercise that right. If, after the information has been lodged against him for which he has asked, he decides that he may fare better on a trial, the way is still open to him. The public, it is true, has an interest in the life and liberty of a person charged with crime. (*Hopt* v. *Utah,* 110 U. S. 574, 579.) The language of the Constitution that "No person shall be held to answer" implies compulsion. The public would have a vital interest if the Legislature should attempt to abrogate the constitutional safeguard by compelling a man without election on his part to answer to a capital or other infamous crime without previous presentation of his case to a grand jury. (*Ex parte Bain,* 121 U. S. 1; *Ex parte McClusky,* 40 Fed. 71.) But it is difficult to see how the public may have any special interest opposed to an optional method of procedure, where the rights of a person are not to any degree impaired, and where in all probability the result will not be different. There is nothing here unreasonable or that offends good morals or sound public policy. A delay has been overcome, with benefit rather than harm to both defendant and the public. The former has been offered a new privilege, without depriving him of any right. Here, if anywhere, a constitutional right may be waived.

In many instances men whose guilt was not seriously open to question have tried unsuccessfully to take advantage of constitutional provisions to escape the consequences of their misdeeds. It

has been claimed that where a jury disagreed there could be no new trial because the defendant could not be twice put in jeopardy. (*People* v. *Goodwin*, 18 Johns. 187.) In an attempt to shield others, frequent resort was had to the provision that a man should not be compelled to give evidence against himself. Where the statute furnished safeguards against harm, the provisions of the Constitution did not prevent punishment of a stubborn witness. (*People ex rel. Hackley* v. *Kelly*, 24 N. Y. 74; *People* v. *Sharp*, 107 id. 427.) After the decision in *Counselman* v. *Hitchcock* (142 U. S. 547) the doctrine in those cases was modified. (See *People ex rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253.) But when a statute gave absolute protection, the witness was compelled to answer. (*People ex rel. Lewisohn* v. *General Sessions*, 96 App. Div. 201; affd., 179 N. Y. 594.) Constitutions give no abstract rights, inflexible and inexorable, by which men can absolve themselves from all duty to society.

The provision for a jury trial (Const. art. 1, § 2) may be waived by a plea of guilty, and punishment imposed in every case except where the crime charged is or may be punishable with death. (Code Crim. Proc. § 332.) In certain jurisdictions there may be waiver of jury trial without a plea of guilty, and the defendant may be tried before the court, and the election is binding. (*State* v. *Worden*, 46 Conn. 349; *Dillingham* v. *State*, 5 Ohio St. 280.) In many other respects irregularities which transgress constitutional provisions may be waived, and objection may not be raised after conviction. (*People* v. *Thorn*, 156 N. Y. 286; *United States* v. *Gale*, 109 U. S. 65.)

It has been held that the constitutional right to be confronted by witnesses cannot be waived, particularly by acquiescence or failure to object. (*State* v. *Mannion*, 19 Utah, 505; *contra*, *Diaz* v. *United States*, 223 U. S. 442.) In this State it has recently been held that such right may be waived. (*People* v. *Sugarman*, *supra*.) Many years ago it was held that there could be no waiver of trial by a constitutional jury of twelve. (*Cancemi* v. *People*, 18 N. Y. 128.) That rule still prevails although the doctrine has been somewhat modified in this and other jurisdictions. (*People* v. *Toledo*, 150 App. Div. 403; affd., 206 N. Y. 661; *Grove* v. *United States*, 3 F. [2d] 965.)

It would be difficult to reconcile satisfactorily the reasoning in the cases where waiver is permitted and in those where it is denied. About all that can be said is that some of the decisions are dogmatic; and that their authority must be recognized because of their long existence. Chiefly when waiver is not permitted there is a question of jurisdiction or of fundamental rights, and public injury would result.

As we have said, this case is one in which no public interest is jeopardized. The court had jurisdiction of the defendant and of the crime. It was a question only of procedure. The statute is remedial in its nature and serves a useful purpose. It carries no harsh weapon of compulsion. It deprives no one of any right without his consent. It merely offers a privilege. It has been in effect nearly three years and has received through acquiescence a practical construction which is worthy of consideration. We see no reason why this useful instrumentality which may be helpful both to a person charged with a crime and to society, should be cast aside.

The order should be reversed, the writ dismissed and the convicted prisoner remanded to the reformatory.

HINMAN, WHITMYER and HASBROUCK, JJ., concur; VAN KIRK, P. J., dissents on the ground that the privilege said to have been waived is not a personal privilege but is a privilege subject to the rules of public policy and morality, and the procedure in this State in a criminal case without action of the grand jury would not be due process of law.

Order reversed on the law and writ dismissed, and the prisoner remanded.