In the Matter of VICTOR BRESCIA et al., Petitioners, *v.* CLAYTON F. MUGRIDGE, as Mayor of the Incorporated Village of Asharoken, et al., Respondents.

Supreme Court, Special Term, Suffolk County, January 24, 1967.

*Cahn & Cahn* for petitioners. *Miner D. Crary, Jr.,* for respondents.

JACK STANISLAW, J. The petitioners, property owners and taxpayers in the Incorporated Village of Asharoken, have brought this proceeding to enjoin the respondent Mugridge from acting as Mayor of the village and the respondent Mack from acting as Trustee. Issue has been joined, for the most part, as to the law applicable to the material facts which are essentially not disputed.

Mugridge was and is continuing to act as Mayor of Asharoken. There was at least a hiatus in his incumbency and possibly an end to it altogether. It seems that in the early morning of September 6, 1966 Mugridge, for reasons not relevant to this proceeding, decided to resign as Mayor. He wrote out a note to the Village Clerk stating his intention and desire to resign as of that day and left it in the Clerk's mailbox in front of her home. Later that same day the Clerk found the document, read it and retained it. Mugridge himself made his act public later that same day. Seven days later, September 13th, he announced that he had changed his mind and would remain as Mayor, especially since the Village Attorney had informed him that the resignation was ineffective anyway. The paper was still with the Clerk then, and in fact was physically withdrawn by Mugridge, with the Clerk's consent, on September 28, 1966.

Mack's involvement stems from a special meeting of the Village Trustees called for and held September 26, 1966. At that time he was appointed to fill a vacancy. Petitioners reason that since Mugridge was not the Mayor he could not call the special meeting, that it was, therefore, void, and so Mack's appointment was void. The respondents point out that the meeting was called by the Trustees and the Mayor jointly, and so was proper regardless of Mugridge's status.

The Mayor protests the ability of these petitioners to bring their action in the first place. He denies their standing to test or protest his continuing as Mayor. At section 63-b of the Executive Law respondents indicate the codification of the ancient common-law writ of quo warranto. This king's writ inquired into the authority of one who claimed or usurped an office, to determine the right alleged to it. In this State the Attorney-General may bring the writ to try title to public office, and it is claimed that such procedure is the one exclusively available since petitioners seek to negate the right of respondents to the public offices of Mayor and Trustee, respectively. But even quo warranto has its limitations and is not available

or appropriate in every instance. The writ " will lie only where the party proceeded against is either a *de facto* or a *de jure* officer in possession of the office \* \* \* only \* \* \* when the facts are in dispute " (*Matter of Smith* v. *Dillon*, 267 App. Div. 39).

As noted, the facts in this case are not seriously, if at all, in dispute. Application of section 63-b of the Executive Law would also depend upon possession of the office of Mayor of the village by someone, somehow (*de facto* or *de jure*). The issue as to possession in turn depends upon whether or not the office became vacant. If vacant, quo warranto might not lie, for there must first be an official against whom the proceeding is directed (*People ex rel. Kelly* v. *Common Council*, 77 N. Y. 503). By the same token, if the office is occupied as here, the instant proceeding is said to be not proper in lieu of quo warranto (*People ex rel. Wren* v. *Goetting*, 133 N. Y. 569; *People ex rel. Requa* v. *Neubrand*, 32 App. Div. 49).

But respondent's argument, that petitioners' remedy is through quo warranto, is only correct in part. " The determination of the title to public office belongs exclusively to the courts of law to be exercised by mandamus, prohibition and quo warranto *as the circumstances of the case and the mode of procedure may require.* " (*People ex rel. Corscadden* v. *Howe*, 177 N. Y. 499, 506, emphasis supplied.)

At first glance the prospects of effectively promoting an approach to the instant case as by mandamus might appear remote. Although the facts are not disputed the law controlling those facts is not entirely clear and unambiguous, the first requisite of mandamus (see *People ex rel. Woodill* v. *Tighe,* 145 App. Div. 606, affd. 206 N. Y. 740). However, the cases indicate an undeniable tendency allowing article 78 proceedings such as the one before us to resolve similar disputes of law only (*Matter of Anson* v. *Starr*, 198 Misc. 982; *Matter of Fauci* v. *Lee*, 38 Misc 2d 564, affd. 19 A D 2d 777). Putting it another way, quo warranto is directed to one in office and argues he should not be there because of facts which of course are disputed. The article 78 proceeding takes an agreed state of facts and insists that the law which may be applicable to them is clear.

Petitioners want to enjoin the respondents from continuing to exercise the prerogatives of their alleged public offices. The form of the action is as a special proceeding, with injunctive and consequential mandamus features attached. They do have standing to pursue this procedure (*Matter of Policemen's Benevolent Assn.* v. *Board of Trustees*, 21 A D 2d 693), although the ultimate result is subject to our discretion (*Matter of Ahern* v.

*Board of Supervisors*, 6 N Y 2d 376). Thus we dispose of respondent's alternative suggestion that petitioners were relegated to proceeding only via section 51 of the General Municipal Law, for which procedure they were said to be without qualification anyway (cf. *Clark* v. *Pritchard*, 28 Misc 2d 716). The controversy resolves itself to questions of law only, and relief is available or not upon the determination thereof (cf. *Harrell* v. *Goldin*, 124 N.Y.S. 2d 627; *Matter of Oakley* v. *Longobardi*, 51 Misc 2d 427).

Whether the classic approach is taken so as to distinguish quo warranto and mandamus proceedings as applicable here, or by reference to the simplified stratification of available procedures as set forth in the CPLR (see CPLR 7803, subd. 2), the instant proceeding is held to be validly brought by these petitioners. Although some quo warranto conditions are present, i.e., an officer in possession, *de jure* or *de facto*, there is no real factual dispute. On the other hand, the questions of law present lessen the other traditional, straight mandamus, approach. (The taxpayer's action made possible by General Municipal Law, § 51 only operates against persons *legally* in office but perhaps doing or about to do something illegal.) If the instant suit is improper it is difficult to guess just how these or any other petitioners might press for relief in a similar situation. In any event, we take a broader view of CPLR article 78 which does not limit its use strictly to those existing and categorized proceedings which are nevertheless encompassed by its provisions (CPLR 7801). Certain exclusions are spelled out (CPLR 7801), and the nature and extent of questions which may be raised is clearly specified (CPLR 7803). Our position is that these allowable purposes spell out a broader spectrum of permissible actions than would any attempt to match them up with more well-established and precisely confined remedies (see *Matter of Lowell* v. *Browner*, 47 Misc 2d 729; *Matter of Felice* v. *Swezey*, 278 App. Div. 958; *Matter of Mapes* v. *Swezey*, 278 App. Div. 959).

Assuming the propriety of the proceeding, the single issue relates to the legal ramifications of Mugridge's purported resignation and withdrawal of resignation. Village officers have, of course, the ability to resign, and can do so as specified by section 31 of the Public Officers Law (Village Law, § 4–450). The Public Officers Law, at section 31, permits resignation pursuant to the method prescribed therein. Thus, resignation must be written. It is effective as indicated (unless the date is more than 30 days from the date of filing or delivery), which here means immediately, September 6, 1966. It is to be delivered to and filed by

the Clerk, which delivery must be to the Clerk's place of business or office. Delivery is adequate in some instances at the Clerk's residence. Finally a resignation, no matter when effective, may not be withdrawn or cancelled except by consent of the Clerk to whom it was delivered.

The Mayor's resignation was in writing and effective immediately. He insists that its delivery was faulty, the placing of it in the Clerk's mailbox outside her residence being something less than the statutory requirement. Mugridge is, as a practical matter, equating "delivery to" with "service upon". This is not an unreasonable approach, noting the totality of the section and the general consistency of its provisions for getting a resignation to its proper destination. Although "delivery" is less broad a word of art than "service" it is difficult to expand the distinction to any great degree (cf. 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 308.02, 311.06). All the more so because it is only with reference to resignations which must be addressed to those other than specified officers that the statute approves delivery *at a place of residence* (Public Officers Law, § 31, subd. 3). The resignation of a *village officer* is to be directed to the Village Clerk and delivered *to* the Clerk at his place of business or filed in his office. This is clearly spelled out in the statute and obviously does not include as an exception the residential delivery specified for some classifications of resigning persons.

At this point one thing is clear: Mugridge did *not* resign in accordance with the statutory scheme (Public Officers Law, § 31). But he did intend to resign and translated his intention to a writing then placed in safe proximity to the otherwise proper recipient. The problem haunting us here is the proposition that Mugridge wanted to resign, put his thought to paper, got it almost but not quite to the Village Clerk, and then so utterly changed his mind that he now attacks not the actuality of his clear intent on September 6 but rather the technical and procedural errors he made trying to effectuate that intent. Since he did change his mind he argues now that it is fortunate that he made the mistakes he did, for they afford him this opportunity to deny the logical consequences of his actions in terms of the relevant statute.

The Mayor's premise, that resignation must follow the strict letter of the statute, is too untenable to be validated here. It presumes a difficulty in prying oneself from public office not apparent in precedent or the statute. Village officers *may* resign as provided by the Public Officers Law (Village Law, § 4–450), and the latter similarly indicates that "Public officers *may* resign

as follows:'' (Public Officers Law, § 31, subd. 1; emphasis supplied). These *permissive* provisions implicitly acknowledge other ways and means of resignation (*Logan* v. *Pressel*, 49 Misc 2d 516). Substance takes priority over form in our courts, and we are hard put to invoke the statute in such a way as to override Mugridge's clear and voluntary mainfestation of intent. There is no ambiguity in the letter of resignation, nor is any claimed. Because Mugridge feels differently now is no reason for a construction of the statute which would operate to restrict and confine the form of resignations not otherwise intended. The particular aim of section 31 moves only in the direction of governmental certainty. If intent is present and is transmitted to the right person or place there would not seem to be much more to be desired. We do not believe Mugridge has the capacity to complain too loudly that this court affirms his accomplishment of that which he set out to accomplish.

If Mugridge is to succeed at all it must be on the basis of his change of heart, however imperfectly transmitted. Petitioners make a valid point in observing the strong likelihood that a withdrawal or cancellation of resignation pursuant to the statute, upon consent, is subject to its being in the same form as the original document; that is, in writing (Public Officers Law, § 31, subd. 4). Notwithstanding this provision, an extra-statutory valid resignation should reasonably be capable of a less stringent test of withdrawal or cancellation. If strict attention to form is not a prerequisite in the first instance it ought not be in the second. One acting carefully is more apt to be called upon to re-act with care. The Mayor's intended relinquishment of office was consummated because he wanted it so. We cannot beat him over the head with statutory formality after taking cognizance of its nonexclusive, slightly variant application. Again, substance controls, the more so to relieve consequences which might otherwise flow had acts and events been more carefully and thoughtfully analyzed.

The completed resignation effective September 6, 1966 was cancelled orally the following day, and withdrawn physically about three weeks later. The Village Clerk who had received it agreed, on September 7, to disregard it, and later actually returned the document. In the frame of reference of this proceeding the valid resignation was then validly extinguished within 24 hours.

We must note our impression that the result herein is largely dependent upon considerations of time, admissions, and undenied allegations of acts. The course of events here depicted and the

part played by the Mayor — in, out, and in again — is not flattering of the participants if only in terms of stable government. On all sides, to the detriment of the village, we have observed more emotion than thought, more nit picking than co-operation, more vendetta than public spirit. The conclusions reached, having the effect of condoning the Mayor's actions, should not be so interpreted. We are compelled to suggest the benefits to be derived from an avoidance of similar activities by responsible persons participating in governmental affairs in whatever capacity.

The petition is dismissed. Petitioners are relegated to possible relief at the polls.