In the Matter of WARREN M. ANDERSON, as Majority Leader and Temporary President of the New York Senate, et al., Respondents, v MARY ANNE KRUPSAK, as Lieutenant Governor of the State of New York, et al., Appellants, THEODORE M. BLACK, as Chancellor of the Board of Regents of the University of the State of New York, Respondent.

Third Department, March 4, 1976

230

*Donovan, Leisure, Newton & Irvine (Owen McGivern* of counsel), for Mary Anne Krupsak and another, appellants.

*Rubin, Baum, Levin, Constant & Friedman (Max J. Rubin* of counsel), for Regents Yavner and others, appellants.

*David W. Peck, John L. Warden* and *Richard J. Urowsky* for Warren M. Anderson and others, respondents.

*Robert D. Stone* for Theodore M. Black, respondent.

LARKIN, J. The petitioners seek judgment, pursuant to CPLR article 78, voiding the election of appellants Batista, Kendall and Yavner as Regents of the University of the State of New York. Vacancies on the Board of Regents are filled pursuant to section 202 of the Education Law, which provides in relevant portion: "Commencing April first, nineteen hundred seventy-four, each regent shall be elected for a term of seven years, each such term to expire on the first day of April. Each regent shall be elected by the legislature by concurrent resolution in the preceding March, on or before the first Tuesday of such month. If, however, the legislature fails to agree on such concurrent resolution by the first Tuesday of

such month, then the two houses shall meet in joint session at noon on the second Tuesday of such month and proceed to elect such regent by joint ballot."

In 1975, there were three vacancies on the Board of Regents. The houses were politically divided and the vacancies could not be filled by concurrent resolution. Therefore, pursuant to section 202, a joint session was to be held on March 11, 1975, the second Tuesday in March.

On March 11, the New York State Assembly adopted, and referred to the Senate for its concurrence, a resolution proposing to meet in joint session at noon that day for the purpose of electing three Regents. The Senate refused to concur until certain procedural details had been resolved. In the course of the Senate debate, at approximately 1:30 P.M., respondent Krupsak, the President of the Senate, ruled that, pursuant to section 202 of the Education Law, the Senate would stand in recess and that the joint session would begin forthwith. No motion for recess had been made or adopted by the members of the Senate.

Respondent Krupsak terminated the debate on the propriety of her ruling by stating that "[t]here is only a joint session of the Senate and Assembly immediately" and left the room. At approximately 1:45 P.M. while the Senate debate continued with all those previously present remaining, respondent Krupsak arrived at the Assembly Chamber. At the invitation of respondent Steingut, the Assembly Speaker, respondent Krupsak declared a joint session of the houses of the Legislature to be convened. No members of the Senate were present.

After meetings and conferences failed to resolve the conflict, the Senate reconvened at approximately 5:30 P.M. and duly passed an amended version of the said Assembly resolution. Among other things, the Senate resolution proposed to establish a bipartisan committee, with members from both houses, to adopt rules of procedures for the conduct of the joint session and to recognize the joint session convened earlier in the day by respondent Krupsak, *if the Assembly would agree to adjourn the session until 11:00 o'clock the next morning.* This resolution was never considered or adopted by that body.

At approximately 5:45 P.M., while the Senate was in session, respondent Krupsak purported to reconvene the joint session of the house of the Legislature in the Assembly Chamber. The petitioners legislators protested the legality of the session

throughout its course, and, additionally, challenged the refusal of respondent Krupsak to permit them to decline to vote. The session proceeded to purportedly elect the challenged Regents with 113 votes, a majority of the total members of the Assembly (150) and Senate (60). Although some Senators were present and the Senate had adjourned by the time, approximately 7:40 P.M., that the vote was taken, no quorum of Senators was present at the time the meeting was reconvened, at any time during its course or at the time of the vote.

In deciding in favor of the petitioners, Special Term found, among other things, the following: (1) section 202 of the Education Law does not mandate the election of Regents at the precise hour set forth in the statute; (2) section 202 does not confer upon the Lieutenant Governor authority to convene a joint session of the Legislature; (3) although a concurrent resolution of the houses was not necessary in order to convene a joint session, a quorum of each house was necessary for the session to conduct business.

Petitioners have brought this proceeding under article 78 to challenge the election of respondent-appellants Batista, Kendall and Yavner. Judgment is also sought annulling the determination of respondents Krupsak and Steingut that the challenged Regents were "duly elected".

We must decide whether quo warranto, under the facts of the instant case, which are not in serious dispute, is an exclusive remedy, or whether an article 78 proceeding in the nature of mandamus might also lie. The Attorney-General may maintain an action, upon his own information or upon the complaint of a private person, against a person who usurps, intrudes into, or unlawfully holds or exercises within the State a franchise or a public office (Executive Law, § 63-b). Mandamus generally will not lie to try title to public office except in certain situations in which quo warranto is inadequate or inapplicable (23 Carmody-Wait 2d, NY Practice, § 145:133; *Matter of Jones v Town Bd. of Town of Petersburg,* 35 Misc 2d 688).

Although there is considerable authority to the effect that an article 78 proceeding is a proper vehicle to test title to a public office when there are no questions of fact involved *(Matter of Taylor v Sise,* 43 AD2d 140, affd 33 NY2d 357; *Matter of Vescio v City Manager of City of Yonkers,* 69 Misc 2d 68, affd 41 AD2d 833; *Matter of Brescia v Mugridge,* 52 Misc 2d 859, affd 29 AD2d 632), we see no basis, either in law

or in reason, for allowing an exception in this case to the general rule that quo warranto is the exclusive vehicle for testing the title of one holding public office *(People ex rel. Manice v Powell,* 201 NY 194; *Greene v Knox,* 175 NY 432; *People ex rel. McLaughlin v Board of Police Comrs. of City of Yonkers,* 174 NY 450).

Petitioners have also prayed that "judgment be entered annulling the determination of respondents Krupsak and Steingut that * * * [the Regents] were duly elected". In their status as electors of the Regents, petitioners, as persons "substantially affected" by the acts complained of and those "most likely to seek invocation * * * of the allegedly improper acts" *(Zimmerman v Murray,* 50 AD2d 668) should have standing to challenge the procedures by which the Regents were elected.

In view of the importance, however, of the questions presented herein, we exercise our discretion and convert this article 78 proceeding into an action for declaratory judgment *(Matter of Jerry v Board of Educ. of City School Dist. of City of Syracuse,* 35 NY2d 534; CPLR 103, subd [c]). To that end, it is necessary that this court make certain declarations in regard to the meaning and intent of the language of section 202 of the Education Law.

Because the Legislature failed to agree on each Regent by concurrent resolution, a joint session was necessary. Petitioners urge that a concurrent resolution of each house was necessary to effectuate that joint session. We disagree. Even though it is true that all joint sessions called pursuant to this statute since its enactment have commenced by a concurrent resolution, a plain reading of the statute would indicate that such resolutions are more ceremonial than necessary. A concurrent resolution is not mandated by the statute and, as Special Term properly concluded, what the Senate and Assembly may accomplish by a concurrent resolution, they can also accomplish by statute.

Although section 202 of the Education Law provides that "the two houses shall meet in joint session at noon on the second Tuesday" to elect a Regent by joint ballot, the parties hereto agree, and Special Term so found, that such language does not mandate the houses of the Legislature to meet at that exact date and time. We hold that the date and time in the statute is directory only and that the joint session may be convened at that time or within a reasonable time thereafter.

Indeed, two of the three joint sessions heretofore held under the statute took place days after the date set in the statute.

Once it has been determined that the time and place set in the statute are directory only, it follows, a fortiori, that the Senate and Assembly must agree as to the date and time of the joint session by resolution or motion (traditionally, the place has been the Assembly Chamber). This record reveals no such agreement. The Assembly resolution (not concurred in by the Senate) called for a joint session on March 11, 1975 at noon. The Senate resolution would have recognized the joint session if the Assembly would agree to an adjournment until March 12, 1975 at 11:00 A.M. The Assembly, however, did not concur in that resolution. On this record, therefore, it is clear that there was no meeting of the respective minds of the Assembly and Senate in regard to time and, accordingly, that there was no joint session as mandated by the statute. We find no basis for altering this determination on the fact that a number of Senators, not constituting a quorum and acting as individual members, appeared in the Assembly Chamber on the evening of March 11, 1975, when the purported election was held.

We are not unmindful of the argument that either the Assembly or the Senate could forestall the mandated election of people to this vital office by continually refusing to agree to a time and date. This argument, however, assumes that the members of the reluctant house will not obey the law that they are sworn to uphold. This court can make no such presumption. On the facts of this case, it cannot be said that the agreement of the Senate, somewhat conditional though it may have been, to meet in joint session to elect Regents, less than 24 hours after the date and time set in the statute, was unreasonable.

We find no authority in the statute in question (Education Law, § 202) or elsewhere, for the President of the Senate to declare the Senate in either recess or adjournment or to convene a joint session of the Legislature.

At this juncture it is appropriate for us to consider the meaning and effect of the mandated "joint session * * * to elect * * * by joint ballot" (Education Law, § 202). We hold that once the Senate and Assembly have properly convened in joint session, the members then became a single body, with a majority of all the members of the Senate and Assembly constituting a quorum, with each member entitled to an equal

vote with every other member *(Whiteside v People ex rel. Upham,* 26 Wend 634; *MacKenzie v Travia,* 55 Misc 2d 1016).

Finally, we hold that the actions of the Board of Regents, including all those in which the respondents members participated, are valid acts and binding as against third parties *(Matter of Sherrill v O'Brien,* 188 NY 185; Public Officers Law, § 30).

The judgment should be modified, on the law, by reversing the first, second, third and fourth decretal paragraphs thereof; by dismissing so much of the petition as requests relief against respondents Black, Batista, Kendall and Yavner; by declaring that a quorum of a joint session of the Legislature under section 202 of the Education Law is a majority of the numbers of the combined houses of the Legislature and that the purported joint session of March 11, 1975 was invalid as not being duly convened, and, as so modified, affirmed, without costs.

MAHONEY, J. (concurring in part and dissenting in part). I respectfully dissent. On this record it must be conceded that the incumbent appellant Regents are in office under color of title so as to be *de facto* or *de jure* office holders *(Matter of Ahern v Board of Supervisors of County of Suffolk,* 7 AD2d 538, affd 6 NY2d 376, and cases cited therein). Thus, in the absence of any claim by petitioners that they, individually, are claimants to the office *(Matter of Ahern, supra; Matter of Vescio v City Manager of City Yonkers,* 69 Misc 2d 68, affd 41 AD2d 833) or that a vacancy exists in the office of Regent (23 Carmody-Wait 2d, NY Practice, § 145:133) or that petitioners have a statutory right to directly challenge such office *(Matter of Probeck v Borth,* 35 AD2d 553) or that petitioners have postured themselves as residents or taxpayers seeking proper representation *(Matter of Brescia v Mugridge,* 52 Misc 2d 859, affd 29 AD2d 632; *Matter of Entwhistle v Murtaugh,* 44 Misc 2d 1022) or that any property or contract right of petitioners is being infringed upon, we must conclude that the right of the appellant Regents to hold the offices to which they were elected is not before this court. Further, since I hold that under the facts of this case, title to the office of Regent can only be challenged by the Attorney-General of the State of New York (Executive Law, § 63-b) or by a resident citizen whose direct interest would be affected by acts of the challenged Regents *(Matter of Taylor v Sise,* 43 AD2d 140, affd 33 NY2d 357), we are without authority under CPLR 103 to convert this article 78 proceeding into quo warranto.

However, despite the fact that the right of the appellant Regents to hold office is not before this court, I feel that the petitioners, as elected representatives and as electors of the Regents, have a right to judicial review of the methodology employed by the Legislature, as an entity, in carrying out the command of section 202 of the Education Law to the end that vacancies on the Board of Regents be filled prior to April one of the year in which such vacancies occur. Such a review of legislative conduct, of course, cannot be accomplished within the context of an article 78 proceeding where, as herein, the petitioner-respondents have no personal interest in the offices at stake but only such interest as they may derive from their status as electors, which status is of dubious value because the votes of the petitioner-respondents, had they attended the joint session, would not have prevented the election of the appellant Regents *(Coleman v Miller,* 307 US 433). However, the issues raised herein are not hypothetical or abstract, but real, definite and concrete, touching the legal status of legislators when convened in an unicameral body, and thus are justiciable in nature *(Blumberg v City of Yonkers,* 21 AD2d 886, affd 15 NY2d 791) and, therefore, the proper subject for judicial resolution in the public interest. Declaratory judgment is singularly appropriate for this purpose and I therefore convert this CPLR article 78 proceeding into an action for declaratory judgment (CPLR 103).

Section 202 of the Education Law, in pertinent part, provides: "Commencing April first, nineteen hundred seventy-four, each regent shall be elected for a term of seven years, each such term to expire on the first day of April. Each regent shall be elected by the legislature by concurrent resolution in the preceding March, on or before the first Tuesday of such month. If, however, the legislature fails to agree on such concurrent resolution by the first Tuesday of such month, then the two houses shall meet in joint session at noon on the second Tuesday of such month and proceed to elect such regent by joint ballot." Concededly, there was no concurrent resolution on or before the first Tuesday of March, 1975 electing any Regent to office. Accordingly, section 202 mandates "the two houses *shall* meet in joint session at noon on the second Tuesday of such month and proceed to elect such regent by joint ballot" (emphasis supplied). In furtherance of that end Lieutenant Governor Krupsak caused to be delivered to the Senate an Assembly resolution to meet in joint session

in the Assembly Chamber for the purpose of electing Regents. When the Senate failed to concur in that resolution, the Lieutenant Governor, as President of the Senate, announced that a joint session was convened as a matter of law (Education Law, § 202), recessed the Senate and announced that the joint session would be convened forthwith. No appeal was taken from that order. In fact, after a recess, the Senate reconvened and by amended resolution conceded that a joint session had been convened by unanimously adopting an amended resolution which, in pertinent part, stated: *"[T]hat the Senate and Assembly being constituted in joint session on this day, March eleventh, nineteen hundred seventy-five in joint session in the Assembly Chamber, for the purpose of nominating and electing, by joint ballot, regents of the University of the State of New York"* (emphasis supplied). After certain Senators refused to attend the joint session, recognized by the Senate as having been convened in its own amended resolution, the presiding officer of the joint session announced that the joint session was lawfully convened and that body proceeded to elect three Regents by a majority vote of the legislative members present at said joint session.

It is at this posture of the factual situation that I depart from the conclusion reached by the majority. They are insisting that some formalism, not set forth in the statute, such as a concurrent resolution setting forth the exact time and date of a joint session, is necessary in order that a joint session might legally be constituted to conduct business. This conclusion of the majority seems to be premised on an interpretation of section 202 of the Education Law that holds the instructions therein contained are directory only and that both houses must jointly agree as to when and where a joint session for the election of Regents is to be held. I conclude otherwise. I find that the provisions of section 202 are mandatory, particularly when the two houses are unable to concur in the election of Regents by concurrent resolution. In that event, the subject statute does not instruct, it mandates that *"the two houses shall meet in joint session at noon on the second Tuesday of such month and proceed to elect such regent by joint ballot."* (Emphasis supplied.) This the Legislature did and it cannot be said that a single Assemblyman or Senator was unaware that a joint session had been convened in the Assembly Chamber for the purpose of electing Regents. In my view, that is enough. For this court to require more, as

suggested by the majority, militates against the long-recognized judicial admonition against the court's intervening in the legislative process absent an "overriding constitutional question". *(Matter of Gottlieb v Duryea,* 38 AD2d 634, affd 30 NY2d 807, cert den 409 US 1008.) It is not our function to fashion procedural rules for another coequal branch of our State government.

While Special Term was correct in determining that the Legislature could do by statute what they could do by concurrent resolution, i.e., convene a joint session into an unicameral body for a purpose specifically delineated by section 202, it erred in holding that a quorum of each house was necessary for the joint session to carry out the business statutorily assigned *(Whiteside v People ex rel. Upham,* 26 Wend 634; *Matter of Humphrey v Superintendents of Poor of County of Montroe,* 10 Wend 612). The provisions of our State Constitution (art III, §§ 1, 9) relied upon by Special Term as the sole authority for its position that "[A] joint session of the legislature is not a meeting of a majority of the total members of both houses, but rather requires the attendance of a majority of the members of each house to comply with the provisions of Section 202", speak to the contrary. Sections 1 and 9 of article III of the Constitution clearly provide for the function of the Legislature as a bicameral body in the ordinary discharge of its duties, and have no relevance to those few instances that said body is statutorily commanded to jointly convene.

The joint session was convened by operation of law. A quorum of the unicameral body was present and a majority of those present duly and legally elected the appellant Regents.

The judgment should be reversed, without costs.

HERLIHY, J. (concurring part and dissenting in part). I concur in the following paragraph of the majority opinion: "In view of the importance, however, of the questions presented herein, we exercise our discretion and convert this article 78 proceeding into an action for declaratory judgment *(Matter of Jerry v Board of Educ. of City School Dist. of City of Syracuse,* 35 NY2d 534; CPLR 103, subd [c]). To that end, it is necessary that this court make certain declarations in regard to the meaning and intent of the language of section 202 of the Education Law."

It appears to me that much of what is said in the other opinions herein, in reality, is part of the legislative "house-

keeping" (i.e., right of the Lieutenant Governor to preside at a joint session; manner of recessing and reconvening the Senate, *et cetera)* and, therefore, not subject to judicial review, at least in the present instance.

The only issue for this court concerns whether there was a meeting in joint session of the Legislature, pursuant to section 202 of the Education Law, and whether there was a quorum present and voting. There appears to be unanimity as to the quorum present and voting.

Prior to amendment by chapter 5 of the Laws of 1959, section 202 provided that the Legislature would elect Regents "on or before the fourteenth day of [February] * * * on joint ballot of the two houses thereof." Chapter 5 of the Laws of 1959 provided for election by a concurrent resolution or by a joint session.

The purpose and intent of section 202 of the Education Law, at the time of passage, was explained by its sponsor, the late Senator Brydges, wherein he stated: "It is intended to simplify the procedure requirement in connection with the election by the *Assembly and Senate* of members of the Board of Regents. *Whereas heretofore it has been necessary for us to compare the journals in joint session in the Assembly, this permits the election of Regents by concurrent resolution of both houses.* It in no way affects the right of the minority to propose candidates for membership on the Board." (Transcript of Proceedings in Senate of Jan. 13, 1959; emphasis added.)

With reference to the section, there appears to be no argument but that it is mandatory that "[e]ach regent shall be elected by the legislature by concurrent resolution in the preceding March, on or before the first Tuesday of such month." It is patent that the quoted proviso for a concurrent resolution is not only mandatory, but also self-executing. The section then provides that upon failure of the Legislature to agree upon "such concurrent resolution", the two houses shall meet in joint session at noon on the second Tuesday of such month and proceed to elect such Regent by joint ballot.

If the first condition of the statute is mandatory and self-executing, then it follows that the second condition was intended to be likewise mandatory and self-executing unless by agreement of the Legislature, the session is postponed for a reasonable period of time. Here, there was no agreement for postponement. Both houses were aware of the mandate of the statute and as long as there was present a majority of the

combined vote of both houses, the joint session, as required by section 202, was indeed in session and empowered to act. As the late Senator Brydges observed, section 202 in no way affects the right of the minority to propose candidates for membership on the board.

Accordingly, I would find, pursuant to section 202 of the Education Law, that there was a duly constituted joint session of the Legislature.

SWEENEY, J.P., concurs with LARKIN, J.; KANE, J., concurs in the result only; MAHONEY, J., concurs in part and dissents in part in an opinion; HERLIHY, J., concurs in part and dissents in part in a separate opinion.

Judgment modified, on the law, by reversing the first, second, third and fourth decretal paragraphs thereof; by dismissing so much of the petition as requests relief against respondents Black, Batista, Kendall and Yavner; by declaring that a quorum of a joint session of the Legislature under section 202 of the Education Law is a majority of the numbers of the combined houses of the Legislature and that the purported joint session of March 11, 1975 was invalid as not being duly convened, and, as so modified, affirmed, without costs.