In the Matter of ALLEN E. DEKDEBRUN, JR., Respondent, v
CHESTER R. HARDT, as Chairman of the Niagara Frontier
Transportation Authority, et al., Appellants.

Fourth Department, May 22, 1979

## APPEARANCES OF COUNSEL

*William E. Straub* for appellants.

*Findlay, Hackett, Reid & Wattengel* and *Kinney, Buch & Mattrey (Glenn Hackett* of counsel), for respondent.

## OPINION OF THE COURT

MOULE, J.

Defendants contend on this appeal that Special Term erred in denying their motion to dismiss plaintiff's petition. Although this action was commenced as an article 78 proceeding, it was treated by Special Term and the parties as one for declaratory judgment.

On January 2, 1979 Governor Hugh L. Carey appointed Allen E. Dekdebrun as chairman of the Niagara Frontier Transportation Authority (NFTA). The New York State Senate rejected this appointment on the ground that there was no

vacancy in the NFTA chairmanship because the position was occupied by defendant Chester R. Hardt. Dekdebrun commenced this action seeking a judgment declaring that prior to his appointment a vancancy had existed in the office of NFTA chairman, that he was the duly appointed chairman, and that the NFTA should surrender to him all books, papers, money and property belonging to the office of chairman.

Section 1299-c of the Public Authorities Law establishes the positions and terms of office of a chairman and 10 members of the NFTA. Under the statute each position has a term of office of eight years and the expiration dates of the terms are staggered so that they expire in different years. The term provided for the chairman first expired on June 30, 1973 and expires again on June 30, 1981 and every eight years thereafter. In May, 1974 two positions on the NFTA were vacant. One was the remaining term, expiring June 30, 1981, of Chairman William Miller who had resigned. The other was the remaining term, expiring June 30, 1974, of member Aaron Griffin who had also resigned.

On May 29, 1974 Governor Wilson nominated and the Senate confirmed as a "Member and Chairman of the Niagara Frontier Transportation Authority Chester R. Hardt of Williamsville, for a term to expire June 30, 1974, and for an additional term to expire June 30, 1982." On July 17, 1974 Governor Wilson nominated Paul A. Rumbold as a member of the NFTA for a term to expire on June 30, 1981, but the appointment was never confirmed by the Senate. Plaintiff alleged that on these facts no person had been validly appointed chairman of the NFTA following William Miller's resignation from the post in 1974.

Defendants moved to dismiss plaintiff's action on the grounds that it failed to state a cause of action (CPLR 3211, subd [a], par 7) and that there were defenses founded upon documentary evidence (CPLR 3211, subd [a], par 1). The documentary evidence showed that since defendant Hardt's appointment in 1974, no one had questioned his right to the chairmanship, that the Governor's staff had, in all of its communications with him, recognized him as chairman, and that plaintiff's appointment by Governor Carey was rejected by the Senate because the Senate considered Hardt to be NFTA chairman. Defendants also asserted that, inasmuch as the Senate did not confirm Dekdebrun's appointment, he was without standing to bring this action.

Special Term denied the motion to dismiss holding that regardless of the current status of Dekdebrun's appointment, he had standing because he had sufficient interest in the outcome of the litigation. In addition, Special Term held that the circumstances surrounding Hardt's appointment to the chairmanship presented questions which could be resolved only after a plenary hearing.

Only two issues are raised on this appeal: first, whether plaintiff has standing to bring this declaratory judgment action notwithstanding that he has not recorded with the office of the Secretary of State a commission from the Governor made with the consent of the Senate in accordance with section 8 of the Public Officers Law; and, second, whether plaintiff has stated a cause of action.

■ Preliminarily, we must address a procedural question, not raised by the parties, concerning the propriety of this action as a means to try title to the chairmanship of the NFTA. As the dissenters point out, section 63-b of the Executive Law permits the Attorney-General to bring an action in the nature of quo warranto to raise the issues which are presented in this action. Whether quo warranto is a more appropriate remedy for trying title to the chairmanship of the NFTA is an issue that was not raised at Special Term, and we believe that it is not properly before us. More importantly, 14 months have elapsed since the controversy arose over the appointment of two people to the chairmanship of the NFTA, and there is nothing in the record to show that the Attorney-General has taken or intends to take an active role in the resolution of this dispute. Although the dissenters would hold that we should dismiss this action because the parties have brought it rather than the Attorney-General, we believe that the public interest requires that we address the issues now rather than await a quo warranto proceeding brought by the Attorney-General, which he may at some future time choose to bring (see *Matter of Anderson v Krupsak,* 51 AD2d 229, revd on other grounds 40 NY2d 397). We have two persons, plaintiff, appointed by the present Governor and defendant, appointed by former Governor Wilson, each claiming to be chairman of the NFTA. The NFTA is embarking upon a rapid transit system for the City of Buffalo and it is in the public interest that the questions before us be resolved as soon as possible. The case would have been tried before our decision on this appeal except that this court granted a stay of the

trial pending a determination of this appeal. Defendant at no time has sought a delay of the trial or questioned the jurisdiction of the court on the basis that a quo warranto proceeding should have been brought by the Attorney-General.

■ The first question that we must consider is whether plaintiff has standing to bring this declaratory judgment action notwithstanding that plaintiff has not recorded with the office of the Secretary of State a commission from the Governor made with the consent of the Senate. In *Phelan v City of Buffalo* (54 AD2d 262, 264), we held that standing turns upon "[w]hether an individual * * * has a matured legally protectible interest in the outcome of the case such as to assure concrete adverseness in the presentation of issues" (citing *Baker v Carr,* 369 US 186). In *Phelan,* a potential candidate for Mayor of the City of Buffalo was given standing to challenge a candidate's residency ordinance before he was a candidate and before the date for collecting signatures to become a candidate. Here, the Governor has three times attempted to appoint plaintiff to the chairmanship of the NFTA and each time the New York State Senate has refused to confirm his nomination on the ground that there was no vacancy in the chairmanship. On these facts, we believe that Special Term properly held that plaintiff has standing to bring this action.

The second question is whether plaintiff has stated a cause of action. Plaintiff has alleged that Hardt's appointment to the chairmanship of the NFTA under subdivision 1 of section 1299-c of the Public Authorities Law is invalid because of three reasons which indicate Hardt was appointed as a member, rather than as the chairman. First, he was nominated and confirmed as both "Member and Chairman"; second, the term expiring June 30, 1974 and further term expiring June 30, 1982 to which he was appointed was member Griffin's term rather than Chairman Miller's term and, third, the appointment occurred at a time when the Governor was authorized to appoint both the chairman and a member to the NFTA.

■ It has been held that an error in specifying the term of office of an appointment does not invalidate the appointment (see *Matter of Sullivan v Taylor,* 279 NY 364; *People v Dooley,* 171 NY 74; *Matter of Collins v City of Schenectady,* 256 App Div 389; but, see, *People ex rel. Bridgeman v Hall,* 104 NY 170, 176-177).

■ This principle does not apply here where the question is not the effect of an incorrectly specified term of office but, rather, to which office the appointment was made. Given the benefit of every favorable inference (see *Rovello v Orofino Realty Co.*, 40 NY2d 633, 634), these facts are sufficient to state a cause of action for a declaration that the chairmanship of the NFTA is vacant. The case should be remitted for a hearing to enable the court to determine to which term Governor Wilson appointed Hardt, and the date upon which Hardt's term will expire.

Accordingly, the order should be affirmed and the stay vacated.

CARDAMONE, J. P. (dissenting). This case illustrates how an exception broadly applied, without regard to the reason for its creation, becomes the rule itself.

Quo warranto, whose roots are deep in the common law—Blackstone defines it in his Commentaries (2 Blackstone's Comm [Cooley's 3d ed], p 262)—is the historic and traditional remedy to try title to a public office in this State *(People ex rel. McLaughlin v Board of Police Comrs. of City of Yonkers,* 174 NY 450; *Greene v Knox,* 175 NY 432, 437-438; *Matter of Ahern v Board of Supervisors of County of Suffolk,* 7 AD2d 538, 543-544, affd 6 NY2d 376; *Matter of Wier v Board of Trustees of Vil. of Irvington,* 259 App Div 839, 840; *Brush v City of Mount Vernon,* 20 NYS2d 455, 456-457, affd 260 App Div 1048; 23 Carmody-Wait 2d, NY Prac, pp 582, 632-635; 24 Carmody-Wait 2d, NY Prac, p 72). This remedy is now provided by statute in the Executive Law which permits the Attorney-General to bring a direct action either upon his own information or upon the complaint of a private person against one who unlawfully holds a public office within the State. The statute also permits him, in his discretion, to set forth the name of the person rightfully entitled to the office, including the facts supporting that right (Executive Law, § 63-b, subd 1). Quo warranto is not the exclusive remedy. There is a long-recognized exception which permits title to a public office to be tested by mandamus in an article 78 proceeding where the issue is solely one of law and questions of fact need not be determined *(Matter of Dykeman v Symonds,* 54 AD2d 159, 161; *Matter of Cullum v O'Mara,* 43 AD2d 140, 145; *Matter of Felice v Swezey,* 278 App Div 958; *Matter of Sylvester v Mescall,* 277 App Div 961, 962; *Matter of Schlobohm v Munici-*

*pal Housing Auth. for City of Yonkers,* 270 App Div 1022, affd 297 NY 911).

The petition which is before us in this appeal was originally instituted as an article 78 proceeding in the nature of mandamus seeking a judgment that a vacancy exists in the office of the chairman of the Niagara Frontier Transportation Authority and that petitioner is the rightful chairman of that authority. Special Term found disputed facts which require a plenary hearing. The majority conclude that there are fact issues and remit this case for them to be determined.

The majority reach this result by treating this action, initiated as an article 78 proceeding, as a declaratory judgment action. Since the mandamus exception clearly was unavailable, i.e., because of the claimed fact questions, a declaratory judgment action that will ostensibly resolve the disputed facts is deemed appropriate.* In this way the original remedy of quo warranto by means of the broad application of mandamus, is now judicially decreed by the majority to be a "dead-letter", without benefit of such decision by the highest court of our State, and the Executive Law (§ 63-b), providing for the use of quo warranto by the Attorney-General, is effectively repealed without action by the Legislature.

In our view this ancient remedy may not be so lightly disposed of. Because it is a common-law writ inherited by our jurisprudence, quo warranto is a matter triable by jury. More significant is the "screening" function performed under statute by the Attorney-General, to whom application ordinarily must be made to institute such a proceeding. By refusing, within his own discretion, to bring an action to try title to office, the Attorney-General prevents unmerited attacks on incumbents. Were this protective buffer to disappear, capable people would not only be discouraged from seeking public office but those incumbents would be diverted from their duties. Emphasis is given to this point of view by virtue of the fact that a judgment that the holder of an office was not

---

* It strains credulity to hypothesize, as the majority do, that respondent has consented to this matter being promptly decided in a declaratory judgment action at Special Term. In the first place, petitioner initiated this action as an article 78 proceeding in the nature of mandamus, and, to the extent that Special Term then translated the proceeding into an action for declaratory judgment, it did so *on its own motion;* respondent's only motion had been a motion to dismiss. Further, under existing law, a serious question exists as to whether a trial court would have jurisdiction to try title to an office in the absence of the Attorney-General, and therefore, whether respondent consents or not would be an irrelevant consideration.

entitled to it subjects such person to damages in addition to the loss of office (Executive Law, § 63-b, subd 4). It is for this public policy reason that the chief legal officer of the State is the one clothed with the authority to guard the people's interests by maintaining an action against those who unlawfully hold public office.

By treating this mandamus proceeding as a declaratory judgment action, the trial by jury feature of quo warranto, at least arguably, still exists (Siegel, NY Prac, § 439). Unfortunately, however, the protective screening process served by requiring quo warranto to be instituted by the Attorney-General is lost. Perhaps the modern twentieth century declaratory judgment action should supplement the ancient quo warranto proceeding as an appropriate vehicle to try title to public office in New York. If so, the loss of the interposition of the Attorney-General's discretion, mandates sparing use of it, to be reserved for those instances where petitioner can demonstrate that the traditional remedy is unavailable, e.g., where the Attorney-General has not only failed to act, but, in fact, has *refused* to proceed. This is the rule in many other States (see 15 Hastings LJ 222, 227, n 48). Such situation is not revealed in the record in this case.

Further, it is required that in order for a proper declaratory judgment action to lie, a person instituting it must have a legally protectible interest so that his rights are directly in issue, i.e., there must be a genuine dispute, an actual or "justiciable controversy" (CPLR 3001, 3017, subd [b]; 3 Weinstein-Korn-Miller, NY Civ Prac, par 3001.04). Petitioner concedes here that he is not claiming that he has a right to the Niagara Frontier Transportation Authority (NFTA) chairmanship even were it to be declared vacant. Indeed, the courts could not award this position to him since he does not have a commission or appointment from the Governor made with the consent of the Senate and recorded in the office of the Secretary of State (Public Officers Law, § 8). Absent this commission the petitioner had no legally protectible interest in the title to the office and insofar as he originally sought immediate recognition as chairman of the NFTA, his petition failed to state the existence of a genuine dispute or actual controversy necessary in order for a declaratory judgment action to lie.

Moreover, to the extent that the petitioner might have properly sought a declaration that the office is vacant, his

petition should, nevertheless, be dismissed because there is no issue raised which requires a hearing.

The fact that the present incumbent (Hardt) was designated as a "Member and Chairman" is consistent with section 1299-c of the Public Authorities Law, which establishes the NFTA as an authority consisting of "a chairman and ten *other* members" (emphasis supplied). The record before us which reflects entries made in a record maintained by the Secretary of State does not support petitioner's allegations. Indeed, the fact that Mr. Hardt's and Mr. Miller's (predecessor to Hardt as chairman) names are the only ones on that table next to which the designation "Chm." appears, clears up any ambiguity which might otherwise have been found to exist as a result of the improper term to which Mr. Hardt was appointed. Finally, the fact that Mr. Hardt was appointed to a term which, arguably at least, could properly have been given only to a member is of no significance. While the Governor obviously had no authority to change the statutorily prescribed term of the chairman (see *Matter of Sullivan v Taylor,* 279 NY 364), his attempt to do so *absent any other fact* is simply not sufficient to infuse the appointment with ambiguity. Rather, the language which purports to extend Mr. Hardt's term beyond 1981 is customarily treated as mere surplusage and given no effect whatever (see *People v Dooley,* 171 NY 74, 85).

In sum, a declaratory judgment action does not appropriately lie in this case. Even assuming the contrary, the record fails to reveal a fact issue sufficient to question whether a vacancy exists in the office of chairman of the NFTA requiring a trial of title to it.

Accordingly, we dissent and vote to dismiss the petition as a matter of law for its failure to state a cause of action.

HANCOCK, JR., and CALLAHAN, JJ., concur with MOULE, J.; CARDAMONE, J. P., and SIMONS, J., dissent and vote to reverse the order, grant the motion and dismiss the petition, in an opinion by CARDAMONE, J. P.

Order affirmed, with costs, and stay vacated.