W. Gordon Morris, Jr., Also Known as William G. Morris, Jr., et al., Appellants, v Charles E. Cahill, as Chairman and Presiding Officer of the Albany County Legislature, et al., Respondents.

Third Department, November 3, 1983

APPEARANCES OF COUNSEL

*Paul H. Wein* (*Kenneth D. Runion* of counsel), for appellants.

*Robert G. Lyman, County Attorney,* for respondents.

OPINION OF THE COURT

LEVINE, J.

This is an action for a declaratory judgment brought by plaintiffs W. Gordon and Lee Morris as residents, qualified voters and taxpayers of the County of Albany, and by plaintiff Christopher Johnson as a resident qualified voter of the Second Legislative District of the Albany County Legislature. The complaint sets forth six causes of action, the first two of which seek a declaration of the invalidity of the Albany County Legislature's appointment of defendant Sanfort Tanksley to fill an alleged vacancy caused by the purported resignation of John T. Tucker, the elected legislator for the second district. The fourth through sixth causes of action seek a declaration of the invalidity of the county legislature's Resolution Number 67, authorizing the issuance and sale of $6,460,000 of serial bonds and $340,000 of capital notes of the County of Albany to pay for the cost of reconstructing various roads in the county. The resolution was passed on the same date and immediately followed the Tanksley appointment. Special Term dismissed all six causes of action on various legal grounds. Plaintiffs' motion for a preliminary injunction was subsequently denied as moot due to the prior determination on the merits. These appeals from both orders ensued, al-

though Special Term's denial of the motion for a preliminary injunction is not being contested.

### THE VALIDITY OF THE TANKSLEY APPOINTMENT

Plaintiffs challenge the appointment of Tanksley on two alternative factual and legal grounds. One of these grounds attacks the authenticity of the Tucker letter of resignation. In supplementary affidavits submitted in opposition to defendants' motion to dismiss, plaintiffs aver that Tucker had disappeared some months before the resignation letter was submitted and that the letter mysteriously appeared on the desk of the county clerk without anyone having observed Tucker or anyone else deliver it. Also submitted was the opinion of a handwriting expert expressing a finding that the signature of Tucker on the letter was not genuine. As to this second cause of action, it is clear that, irrespective of whether plaintiffs are acting in their capacities as taxpayers, voters, or, in the case of plaintiff W. Gordon Morris, Jr., as minority leader of the county legislature, they are directly challenging defendant Tanksley's title to the public office of Albany County Legislator on the basis of what is purely a question of fact, i.e., the genuineness of the Tucker letter of resignation. This being so, they are barred under the traditional and long-prevailing rule that an action in the nature of quo warranto by the Attorney-General, now statutorily embodied in section 63-b of the Executive Law, is the exclusive means of thus trying title to public office (*Greene v Knox,* 175 NY 432, 437-438; *People ex rel. McLaughlin v Board of Police Comrs.,* 174 NY 450; *Matter of Anderson v Krupsak,* 51 AD2d 229, 232-233, revd on other grounds 40 NY2d 397; *Matter of Ahern v Board of Supervisors,* 7 AD2d 538, 543-544, affd 6 NY2d 376).

We reject plaintiffs' assertion that the public interest in a prompt resolution of the dispute over the validity of Tanksley's appointment and of his official acts is alone sufficient to justify an alternate proceeding to quo warranto. The cases which have permitted an alternate remedy, even those discussing the public interest in resolving doubts over an official status or action, are distinguishable. Some of such cases were actually decided under the well-recognized exception that mandamus may be a proper way

to proceed to test title to office where the issue is solely one of law (see *Matter of Dykeman v Symonds,* 54 AD2d 159; *Matter of Cullum v O'Mara,* 43 AD2d 140, affd 33 NY2d 357; *Matter of Brescia v Mugridge,* 52 Misc 2d 859, affd 29 AD2d 632). In other cases, the objection based upon the exclusivity of quo warranto was not properly raised (*Matter of Dekdebrun v Hardt,* 68 AD2d 241, 244, mot for lv to app dsmd 48 NY2d 882) or was waived by the parties (*Matter of Spillane v Katz,* 25 NY2d 34, 36). The public interest in prompt resolution of any dispute over Tanksley's title to office is not unique here, nor more compelling than it was in any of the cited cases where the mode of challenge to the office was limited to quo warranto.

Moreover, the public interest in speedy resolution of the issue is subject to the countervailing public interest in having the Attorney-General perform a protective "screening" function on such challenges, more fully discussed by the dissenters in *Matter of Dekdebrun v Hardt* (*supra,* pp 247-248). Since the instant action was commenced only several weeks after Tanksley's appointment and there is no suggestion that plaintiffs had previously exercised their right to make a complaint to the Attorney-General (see Executive Law, § 63-b), we are not called upon and need not address the question of whether an alternate remedy should be available where there has been inordinate delay by the Attorney-General in acting on a complaint (cf. *Matter of Dekdebrun v Hardt, supra,* p 244) or an improper refusal to so act.

■ Plaintiffs' alternative challenge to the validity of Tanksley's appointment relates to the timeliness of that action by the county legislature. On this issue, which is the basis of plaintiffs' first cause of action, there is no dispute concerning the relevant facts and, therefore, in accordance with our earlier discussion, quo warranto is not the sole avenue of challenging his official status. Turning, then, to the merits, the Tucker resignation was received January 31, 1983. Under section 205 of the Albany County Charter, the Legislature is required to act within 40 days of the occurrence of a vacancy, after which any appointment must be made by the Governor (Public Officers Law, §§ 42, 43). The 40-day period in this case expired on Saturday,

March 12, 1983. However, subdivision 1 of section 25-a of the General Construction Law provides that, "When any period of time, computed from a certain day, within which or after which or before which an act is authorized or required to be done, ends on a Saturday, Sunday or a public holiday, such act may be done on the next succeeding business day". Since Tanksley's appointment was made on Monday, March 14, 1983, the next succeeding business day, the appointment was timely. In the absence of any further statutory time limitation, the appointment remained timely although it was made in the evening of that business day.

THE CHALLENGES TO THE

VALIDITY OF THE BOND RESOLUTION

■ Pointing out that Tanksley's affirmative vote was necessary to make up the mandatory two-thirds majority for approval of the county bond issue (Local Finance Law, § 33.00, subd a), plaintiffs challenge the validity of the resolution in their third cause of action by renewal of their attack on the validity of Tanksley's appointment. While it appears that plaintiffs have standing to challenge the resolution as county taxpayers (see *Ahern v McNab,* 7 AD2d 546), and perhaps plaintiff W. Gordon Morris, Jr., has such standing as a voting member on the county legislature (see *Matter of Anderson v Krupsak,* 51 AD2d 229, 236 [MAHONEY, J., concurring], *supra*), this cause of action nevertheless fails on the merits. Clearly, there was nothing invalid on the face of the Tucker letter of resignation or the method by which Tanksley was appointed to take his place. Therefore, Tanksley was acting at least as a *de facto* official in voting on the bond resolution, i.e., he was in possession of his office and discharging his function as a county legislator under color of appointment and authority (see 19 NY Jur 2d, Civil Servants, § 251, p 91). Plaintiffs do not allege, nor have they stated in their supplementary affidavits on the motion, that Tanksley or the other defendants participated in the signing or delivery of the allegedly fraudulent resignation letter, nor was defendants' actual knowledge thereof established merely because plaintiff W. Gordon Morris, Jr., expressed doubts as to the letter's authenticity at the time it was received.

Consequently, under a long, unbroken line of authority, Tanksley's *de facto* act in voting on the bond resolution was valid and binding as to the public and against interested third parties (see *Matter of Morgenthau v Cooke,* 56 NY2d 24, 37; *Matter of Anderson v Krupsak, supra,* p 235; *Ahern v McNab, supra,* p 549; see, also, *Sylvia Lake Co. v Northern Ore Co.,* 242 NY 144, cert den 273 US 695; *Matter of Sherrill v O'Brien,* 188 NY 185, 212-213).

In their fourth cause of action, plaintiffs attack the facial validity of the bond resolution for lacking the specificity required under subdivision 1 of section 32.00 of the Local Finance Law. Section 32.00 prescribes the minimum requirements of form and content of a municipal bond resolution and provides that it shall contain: "1. A statement of the specific object or purpose or the class of objects or purposes for which the obligations to be authorized by such resolution are to be issued. Each item of such specific object or purpose shall be described in brief and general terms sufficient for a reasonable identification."

It is plaintiffs' contention that by merely designating "reconstructing various roads in said county" as the purpose of issuing bonds and notes rather than setting forth specific roads, the resolution fails to provide the requisite description in terms sufficient for reasonable identification. However, the statutory provision as written is cast in the alternative; the resolution may state a specific object or purpose for the issuance of the municipal obligations, or it may merely state "the class of objects or purposes". The further requirement of description for identification purposes only expressly applies to items which the resolution has included as a specific object or purpose, and not to a statement only designating a class of objects or purposes. The distinction in statutory treatment between the requirements for a specific object or purpose contained in a resolution and those for a class thereof is clearly not inadvertent. It is repeated several times within section 32.00. Thus, when a resolution refers to items of specific objects or purposes, it must contain an estimate of the maximum cost of each; if the resolution refers to a class of objects and purposes, it must contain an estimate of the maximum cost of the class (Local Finance Law, § 32.00,

subd 2). Subdivision 4 of section 32.00 further requires that the resolution contain a statement of the probable useful life of the specific object or purpose or the class of objects or purposes. However, in the case of a class of objects or purposes, further specificity is only required if there is more than one period of probable usefulness for members within the class. Moreover, the words "class" and "specific", as applied to objects and purposes, are separately defined in the statute (Local Finance Law, § 2.00, subds 20, 22). The statutory definitions refer to the descriptions of each specific object or purpose, or class, contained in section 11.00 of the Local Finance Law wherein their respective periods of probable usefulness are set forth.

■ Thus, it appears that the statutory requirements for describing the objects or purposes of issuing municipal obligations, apart from providing information to the general public and potential investors, are to insure that the funds derived from such issuance of obligations will be expended only for the stated objects or purposes (Local Finance Law, § 165.00) and to determine the period of probable usefulness of the class or specific object or purpose, which in turn limits the maximum period for full repayment of the indebtedness (Local Finance Law, § 11.00). The resolution now under consideration satisfies the foregoing objectives. Therefore, the county legislature was not prevented from designating the reconstruction of roads within the county as a class of objects and purposes for the issuance of its obligations, and there is no facial invalidity to the resolution.

Plaintiffs' fifth and sixth causes of action allege that the bond resolution was invalid because of conflicts with section 131-k of the Highway Law. That section authorizes a county legislature to provide for the construction, reconstruction or improvement of highways in municipalities situated within the county. Certain restrictions on such expenditures of county funds are contained in the statute, however. Relevant here is the requirement that any such highway within a local municipality be one "connecting county or state highways * * * or which is an arterial situated within such municipality and deemed by the county legislative body to serve a vital transportation need

of the county" (Highway Law, § 131-k, subd 1). Additionally, the statute requires the consent of the governing body of the local municipality (Highway Law, § 131-k, subd 1). Plaintiffs allege that when the bond resolution was proposed, the county legislature was furnished a list of the proposed roads to be reconstructed containing certain streets in the City of Albany not qualifying as connecting county or State highways or as arterials. Nor, according to plaintiffs, was the requisite consent obtained from the governing body of the City of Albany, the municipality in which the streets are located.

■ The pleadings and exhibits establish, however, that at most, only a tentative proposal has been made to the legislature concerning the specific roads, the reconstruction of which is to be financed through the bonds and notes. Certainly, there has been no official action by way of resolution of the county legislature actually authorizing the expenditure of county funds for reconstruction of specific highways, a procedure apparently required under section 131-k of the Highway Law (see subds 2, 3). The bond resolution itself, by merely authorizing the issuance of bonds and notes, does not perform that function. The statutory provision of the Local Finance Law authorizing the issuance of municipal bonds and notes, and that of the Highway Law governing the expenditure of county funds to improve highways in municipalities situated in a county, are separate and distinct. There is no provision in the Local Finance Law or elsewhere making full compliance with the pertinent provisions of the Highway Law a condition precedent to the enactment of a resolution authorizing the issuance of county bonds or notes, and we decline to read one into the statute. Therefore, plaintiffs' challenge to the expenditure of any funds derived from the issuance of such bonds and notes to reconstruct streets in the City of Albany is premature and their fifth and sixth causes of action were properly dismissed.

For all of the foregoing reasons, Special Term's order dismissing the complaint in its entirety should be affirmed.

MAHONEY, P. J., MAIN, MIKOLL and YESAWICH, JR., JJ., concur.

Orders affirmed, without costs.