*353 OPINION OF THE COURT
George A. Murphy, J.
This CPLR article 78 proceeding is a case of first impression involving a dispute between the trustees* of a not-for-profit corporation over the effects of the resignations and the withdrawal of those resignations by three of the trustees.
On April 5, 1995, petitioners Kane, Bernstein and Zarin each submitted to the director of the Great Neck Public Library separate written resignations from their positions as trustees of the Library. Bernstein’s resignation was sent to the Library by facsimile at 4:34 p.m. and was "effective immediately,” while Zarin’s resignation was hand delivered that morning and directed to be effective "at the close of business.” Kane’s resignation was sent by facsimile at 6:19 p.m. and stated that it was "effective April 6, 1995.”
After apparently reflecting overnight on their decision, on the morning of April 6, 1995 Bernstein (at 7:52 a.m.) and Kane (at 9:35 a.m.) sent letters to the Library’s director withdrawing their resignations. Zarin hand delivered a similar letter. The Library’s director is not a trustee and is responsible for the day-to-day operation of the Library. He arranged for the other board members to receive on April 6, 1995 copies of both the resignations and the withdrawals of same.
The board of trustees of the Great Neck Public Library never met to consider and vote on the issue of the petitioners’ resignations and their desire to reverse those decisions, even though the board was advised by counsel to accept or reject the petitioners’ attempt to withdraw their resignations. Instead, at a special meeting held 20 days after the withdrawal letters were received, the board of trustees’ first order of business was election of officers. With respect to the question of petitioners’ resignations, the minutes of that April 26, 1995 meeting state that the petitioners had their "opportunity to be heard” by having their statements published in a local newspaper. There was no formal discussion or note recorded on whether to accept the resignations of the petitioners.
The evidence establishes that the Great Neck Public Library is a "not-for-profit association” and is governed by its own bylaws. It is not a public library owned by the municipality of Great Neck. The bylaws of the association do not *354 address the matters of board resignations or withdrawals of same. The Not-For-Profit Corporation Law is also silent on this issue. The court, moreover, is constrained to disagree with petitioners’ argument that the Library is bound by all of the provisions of the Public Officers Law or that the requirements of a writing and delivery of resignations in that law are binding in this instance (see, Public Officers Law § 31 [2]).
The petitioners contend that they acted too impulsively and out of pique for what they deemed affronting conduct by the other board members aimed to force one of the petitioners off a particular committee of the Library. They claim the director’s receipt of the resignation statements could not legally constitute delivery to the board or its members since such receipt had no such import given the limited function of the director as the mere overseer of Library operations under board governance. The petitioners argue that since their withdrawal messages were received by the board members within hours after resignation statements were received by them, their resignation and withdrawal messages canceled each other out so as to prevent termination of their incumbency and creation of any vacancies. They maintain that the time element between the resignation and withdrawal messages was so brief there was no reasonable basis for the board to accept the resignation messages and reject the withdrawal messages. The petitioners see this conduct by the board members as arbitrary and capricious, deliberately precipitous and abusive, and designed wrongly to expel them from their incumbency status.
The respondents deny the charges of wrongdoing that the petitioners have levelled and insist that the receipt of the resignation messages, whether by the director or by the board after he forwarded the messages to them, effectively terminated petitioners’ incumbencies and created three vacancies. The respondents claim that they had no discretion to simply nullify the resignations by accepting the withdrawals since that would represent the filling of the vacancies contrary to the only prescribed and authorized process of an elective process to fill vacancies. Respondents argue that the Library’s director was the person petitioners chose to accept delivery of their messages and they, thus, recognized the director as a legal and proper person to bind both the board and themselves as to delivery. In any event, the respondents dispute that the time and manner of the deliveries have any relevance to the issue of termination since the delivery method petitioners *355 selected resulted in prompt notice thereupon to each of the board members.
After reviewing the record before it, the court finds that the communication of both the resignations and the withdrawals was so close in time that the respondents had an obligation to treat the petitioners’ correspondence to the board as having equal import. Thus, a commonsense interpretation of the message has to be that the withdrawals were intended and did negate and nullify the resignations. For the board members to interpret the resignation messages as creating "instant vacancies” points to the presence of impermissible arbitrary and capricious conduct as a matter of law (see, Matter of Brescia v Mugridge, 52 Misc 2d 859, affd 29 AD2d 632; see also, Matter of Walker v Roach, 195 AD2d 563; Matter of Wonderly v Division of N. Y. State Police, 80 AD2d 974) particularly in light of the animosity and dissension that had prevailed among the parties immediately prior to the dispatch of the resignation and withdrawal messages. The expression "act in haste and repent at leisure” recognizes the very human phenomenon of impulsive utterances that ought not be elevated to the level of considered and meaningful conduct, nor capitalized upon for personal or technical advantage out of proportion to the situation and its consequences. Here in pique or chagrin, the petitioners obviously acted out of hurt and anger provoked by what, rightly or wrongly, they concluded was abusive and unfair conduct by their colleagues on the board of trustees. The respondents, it is clear, seek not to comply dutifully with what they claim is the only way to address the matter but, rather, to be rid of the petitioners and thus end easily and comfortably the contest on library matters of serious importance and long-term significance.
Based upon the foregoing, the court concludes that the refusal of the respondents to defer to the petitioners’ desire promptly to nullify their messages of resignation was an abuse of discretion (see, Matter of Walker v Roach, supra; Matter of Wonderly v Division of N Y. State Police, supra; Matter of Brescia v Mugridge, supra). The attempt by the respondents to create vacancies simply by their declaration of same must fail and the petitioners are consequently declared incumbent trustees whose terms of office were neither inter *356 rupted nor terminated by their submissions of resignations and immediate withdrawal of same. Accordingly, the petition is granted to the extent the petitioners will forthwith resume active and legal participation in all board matters and may not be precluded from doing so by the respondents.

 The resignation by petitioner Richard Furham in January 1995 is not an issue in this proceeding by agreement between the parties.